[Cite as *State ex rel. McCormick v. Indus. Comm.*, 2017-Ohio-370.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Jennifer McCormick, | : | |
| Relator, | : | |
| v. | : | No. 16AP-107 |
| Industrial Commission of Ohio and | : | (REGULAR CALENDAR) |
| Edwin Shaw Hospital, | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on January 31, 2017

*Ziccarelli & Martello,* and *James P. Martello,* for relator.

*Michael DeWine,* Attorney General, and *Shaun P. Omen,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

TYACK, P.J.

{¶ 1} Jennifer McCormick filed this action in mandamus, seeking a writ to compel the Industrial Commission of Ohio ("commission") to grant her an award of permanent total disability compensation ("PTD").

{¶ 2} In accord with Loc.R. 13(M) of the Tenth District Court of Appeals, the case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated the pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision, appended hereto, which contains detailed findings of fact and conclusions of law. The magistrate's decision contains a recommendation that we deny the request for a writ of mandamus.

{¶ 3}   No party has filed objections to the magistrate's decision.  The case now comes before a judicial panel for review.

{¶ 4}   McCormick was injured in 2003 while assisting a patient at Edwin Shaw Hospital into bed.  Her industrial claim has been allowed for lumbar strain/sprain; aggravation of pre-existing degenerated disc disease at L4-5 and aggravation of pre-existing anxiety disorder.

{¶ 5}   McCormick drew temporary total disability compensation for awhile but was ultimately found to have reached maximum medical improvement.  She then filed an application for PTD compensation.

{¶ 6}   A staff hearing officer reviewed the conflicting reports about McCormick's ability to engage in sustained remunerative employment and issued an order denying her application for PTD compensation.

{¶ 7}   This mandamus action followed.

{¶ 8}   Our magistrate carefully analyzed the three issues presented on behalf of McCormick and therefore recommended that we deny the request for a writ.  We find no error of law or fact in the magistrate's decision.  We, therefore, adopt the findings of fact and conclusions of law contained in the magistrate's decision.  As a result, we deny the request for a writ of mandamus.

*Writ of mandamus denied.*

KLATT and BRUNNER, JJ., concur.

———————

# A P P E N D I X

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Jennifer McCormick, | : | |
| Relator, | : | |
| v. | : | No. 16AP-107 |
| Industrial Commission of Ohio and | : | (REGULAR CALENDAR) |
| Edwin Shaw Hospital, | : | |
| Respondents. | : | |

### M A G I S T R A T E ' S   D E C I S I O N

### Rendered on September 23, 2016

*Ziccarelli & Martello,* and *James P. Martello,* for relator.

*Michael DeWine,* Attorney General, and *Shaun P. Omen,* for respondent Industrial Commission of Ohio.

### IN MANDAMUS

{¶ 9} In this original action, relator, Jennifer McCormick, requests a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate the November 16, 2015 order of its staff hearing officer ("SHO") that denies relator's application for permanent total disability ("PTD") compensation, and to enter an order granting the compensation.

Findings of Fact:

{¶ 10} 1. On June 6, 2003, relator injured her lower back while employed as a registered nurse for respondent, Edwin Shaw Hospital, a state-fund employer. The injury occurred when relator was assisting a patient into a bed.

{¶ 11} 2. The industrial claim (No. 03-842706) is allowed for "lumbar strain/sprain; aggravation of pre-existing degenerative disc disease at L4-5; aggravation of pre-existing anxiety disorder." The claim is disallowed for "major depressive disorder, single episode, moderate."

{¶ 12} 3. Temporary total disability ("TTD") compensation has been paid in the claim.

{¶ 13} 4. On January 8, 2014, at the request of the Ohio Bureau of Workers' Compensation ("bureau"), relator was examined by psychologist Douglas Waltman, Ph.D. Dr. Waltman examined for the allowed psychological condition in the claim, i.e., aggravation of pre-existing anxiety disorder.

{¶ 14} 5. In his eight-page narrative report dated January 19, 2014, Dr. Waltman states:

> **INDEPENDENT MEDICAL EVALUATION**
> The Claimant was informed that the information gathered during this interview would be forwarded to the Ohio Bureau of Workers' Compensation.
>
> All relevant medical records were reviewed and taken into consideration. Certain records were given particular attention. These included: a psychological evaluation conducted by Dr. Donald Weinstein on 9/13/2010 (with subsequent addendum), progress notes and treatment summary with her psychotherapist Dr. Richard Barnett, a psychiatric evaluation [con]ducted by Dr. Alf Bergman MD on 11/17/2013, clinical notes by her nurse practitioner Inder Sharma MSN CNS, a psychological evaluation conducted by Dr. Mark Querry Ph.D. on 3/8/2013, a psychological evaluation conducted by Dr. Eugene O'Brien Ph.D. on 6/3/2012, and a psychological evaluation conducted by Dr. James Lyall Ph.D. on 6/16/2011.
>
> **IDENTIFYING INFORMATION**

The Claimant is a 58-year-old, divorced, Caucasian woman who lives with a male roommate. She has 3 grown children who live independently.

## HISTORY
The Claimant grew up in Akron Ohio and her parents divorced when she was 5. After the divorce she was reared primarily by her mother and only had occasional contact with her father. Apart from the divorce she did not recall suffering any other adverse childhood experiences. Her mother was an alcoholic but to her knowledge there was no family history of mental illness. However, in Dr. Weinstein's evaluation on 9/13/2010 she indicated her mother suffered with depression. Contrary to her report it appears this claimant grew up in a highly unfavorable family environment (divorced parents, alcoholic and depressed mother).

## HIGHEST EDUCATION
The [Injured Worker] has an Associate's Degree in Nursing from Summa St. Thomas School of Nursing.

* * *

## MARITAL STATUS
The claimant was married and divorced twice. Although living with a man she does not consider him a romantic attachment.

## WORK HISTORY
The claimant is not working at the present time and has not earned any taxable income since about September, 2010. She has filled a variety of occupations including nursing, banking, retail, and as a food server. Her longest period of employment was 4 years. She has been terminated from nursing positions "a number of times." According to a psychological evaluation conducted by Dr. Donald Weinstein (9/13/2010) she was released from at least one of these positions for insubordination. That same report indicated other reasons she was fired from jobs including; tardiness and abrasiveness with coworkers. At the time of that assessment she did not indicate work-related problems due to memory, concentration, mood, or anxiety. At the time of her injury in 2003 she worked as a nurse at Edwin Shaw Hospital. She had been working for them for approximately a year before her injury. She did not return to that position

after her injury but did find employment with other employers.

* * *

**HEALTH HISTORY**
The [Injured Worker] continues to experience chronic back pain. She experiences pain 2-3 times per week. Generally this pain is of moderate intensity but can become severe.

In addition she has hypothyroidism. She had breast cancer in 2000 and it appears she made a full recovery from that illness. She also had other work-related back injuries prior to the injury of record in 2003. She remembers filing two BWC claims in about the 1990's and in the 2000's.

Her current medications include: Prozac (60mgs) for depression, Xanax (1mgs tid) for anxiety, Synthroid (0.112mgs) for her thyroid, Neurontin (400mgs hs), for nerve pain, Percocet (5mgs qid) for pain, and Ibuprofen (600mgs, prn) for pain.

* * *

**MENTAL STATUS EXAMINATION**
The [Injured Worker] arrived on-time and was adequately groomed and dressed. She was oriented and understood the purpose of the evaluation. She cooperated fully with the procedure. Her mood was flat and her expression of affect was fairly flat as well. She ambulated without difficulty but once had to get up from her chair because it was becoming uncomfortable. Nevertheless, she did not show any outward expressions of pain or engage in any pain posturing. The [Injured Worker] has struggled with suicidal ideation in the past but not currently. She said her concentration is "poor." She stated this was a significant problem at her jobs and contributed to her losing positions (in fact there is no clinical evidence to support this). Her working memory appears adequate. She remembers appointments and was able to give details about what she had for breakfast. Based upon her education she appears to have at least average intelligence. Her abstract reasoning and fund of information are adequate. She manages her own financial affairs suggesting her judgment is adequate.

**DAILY ACTIVITIES**

She takes Xanax for sleep and when she does her sleep is adequate. However, her psychiatrist is attempting to cut back on this medication and this is causing her more anxiety and sleeping problems. She spends her time visiting her daughter, domestic chores at home, and watch[es] TV in the evening. She has regular social contact with other family members and friends. She likes gardening and was able to do this last summer. She is not involved in any social organizations and does not attend worship services. "I have no limitations" with regards to her physical abilities. She had difficulty identifying ways her anxiety and depression interfere with her daily functioning. With additional probing she did admit that sometimes it is hard for her to "push" herself to do things, like exercising.

* * *

**IN RESPONSE TO THE QUESTIONS OF CONCERNS IN THIS IME**
**Q1: Has the injured worker reached a treatment plateau that is static or well stabilized at which you can expect to fundamental, functional or psychological change within reasonable medical probability in spite of continuing medical or rehabilitation procedures (maximum medical improvement)? Include rationale for your decisions.**

**A1:** Yes. At this point mental health services appear supportive rather than rehabilitative based upon the psychotherapist's progress notes. These notes indicate she has made significant gains and cannot be expected to improve further. That is because this claimant has a pre-existing anxiety disorder superimposed upon a personality disorder. This individual will feel acutely anxious as life problems arise (much of this anxiety has a reality basis) and cannot [be] considered tied to injury of record.

**Q2: Can the injured worker return to his/her former position of employment? If yes, are there any restrictions or modifications?**

**A2:** No, but not due to the injury of record. The claimant does not feel confident in her ability to return safely to nursing. She fears she will be fired again for problems with concentration, completing paperwork, and taking too long to perform tasks. The available clinical records does [sic] not

support that concern though. While there is some evidence of impaired concentration a clinical evaluation by a neuropsychologist found no evidence of impaired concentration. Furthermore, that assessment found evidence Ms. McCormick may exaggerate this concern.

The [Injured Worker] tends to externalize blame for her failures on the job. At one position she had a conflict with a supervisor but she pinned responsibility for the problem on the supervisor. Personality issues appear to be the primary reason why she cannot return into the nursing field. Clinical evidence indicates this [Injured Worker] had work performance problems unrelated to her injury. In particular, problems with tardiness, abrasiveness, and insubordination kept her from maintaining employment. She cannot return into nursing due to pre-existing personality problems, not due to sequelae related to her injury. Because she cannot take responsibility for her own character weaknesses she attributes her failures to things she thinks are beyond her control (e.g., problems with memory and concentration).

**Q3: Please provide a summary of any functional limitations solely due to the psychological condition(s) in this claim(s). In other words, please indicate the type of work the injured worker can perform and supportive rationale for your opinion.**

**A3:** As stated above in A2 this worker's limitations at this point are primarily the result of pre-existing personality weaknesses that would interfere with her work performance in any work setting. This includes problems with work tardiness, abrasiveness, and insubordination. These problems probably pre-existed her injury and were probably not exacerbated by her injury. Otherwise, there [is] no evidence her allowed psychological condition would interfere with her work performance at the present time.

* * *

**Q7: If not MMI, when should IW be re-examined?**

**A7:** Ms. McCormick has reached MMI and does not need re-examination.

(Emphasis sic.)

{¶ 15} 6. On January 23, 2014, citing Dr. Waltman's report, the bureau moved to terminate TTD compensation.

{¶ 16} 7. Following a February 14, 2014 hearing, a district hearing officer ("DHO") issued an order terminating TTD compensation based on the January 19, 2014 report of Dr. Waltman.

{¶ 17} 8. Relator administratively appealed the DHO's order of February 14, 2014.

{¶ 18} 9. Following a March 26, 2014 hearing, an SHO issued an order affirming the DHO's order of February 14, 2014. The SHO's order explains:

> It is the order of the Staff Hearing Officer that the motion filed by the Bureau of Workers' Compensation on 01/23/2014 is granted to the extent of this order.
>
> It is the finding of the Staff Hearing Officer that this claim is allowed for physical disorders as well as a psychological disorder. The current temporary total disability compensation being received by the Injured Worker is predicated solely on the allowed psychological disorder. As such, the findings made herein shall he limited to the same.
>
> The Staff Hearing Officer finds, based on the 01/19/2014 report of Dr. Waltman, that the allowed psychological disorder in this claim has reached maximum medical improvement.
>
> The Staff Hearing Officer orders that the Injured Worker's temporary total disability compensation with respect to the allowed psychological disorder in this claim is terminated effective 02/14/2014, the date of the District Hearing Officer's hearing.
>
> The Staff Hearing Officer finds that any temporary total disability compensation with respect to the allowed psychological disorder paid subsequent to 02/14/2014 is an overpayment and orders that the same be recouped pursuant to Ohio Revised Code section 4123.511(K).

{¶ 19} 10. On April 28, 2015, at her own request, relator was examined by psychologist Raymond D. Richetta, Ph.D. In his six-page narrative report, Dr. Richetta opined:

Ms. McCormick is far too agitated to work, secondary to the allowed Aggravation of Pre-Existing Anxiety Disorder. She cannot focus her attention sufficiently for even simple work tasks. She has insomnia too severe to allow her to be at a workplace on time. She would miss an unacceptable amount of work. She is unable to tolerate people well enough to relate to co-workers, supervisors, or the general public. The evaluation finds Jennifer McCormick permanently and totally disabled due to the allowed Aggravation of Pre-Existing Anxiety Disorder alone.

{¶ 20} 11. On May 6, 2015, at her own request, relator was examined by Morgan Oberle, M.D. Dr. Oberle reported:

The patient presents today with chronic, severe, lower back pain, mostly left sided, with pain into her left anterior thigh. Prolonged sitting or activity increase her pain. She manages pain with exercise and stretching as tolerated. She has constant swelling in her left lumbar spine and all of her normal ADL's are painful to perform.

Exam: lumbar spine range of motion is poor, flexion to 40, extension to 5. Lumbar spine is painful to palpation with spasms. Left positive SLR Test noted. Hypoesthesia of the left lower extremity noted. Muscle strength graded 4/5 for the left lower extremity. Hamstrings are very tight.

It is our opinion that Ms. McCormick is unable to work in any capacity. She continues to exhibit chronic, severe pain symptoms and has positive objective findings consistent with her allowed diagnosis. Her pain has not improved despite numerous and extensive medical intervention.

This letter is to serve as our opinion that in our medical opinion, Jennifer McCormick should be declared permanently and totally disabled as a result of her injuries. This opinion is based solely * * * on the allowed conditions on the claim.

{¶ 21} 12. On May 29, 2015, relator filed an application for PTD compensation. In support, relator submitted the April 28, 2015 report of Dr. Richetta and the May 6, 2015 report of Dr. Oberle.

{¶ 22} 13. On July 20, 2015, at the commission's request, relator was examined by psychologist Joseph D. Perry, Ph.D. In his nine-page narrative report, Dr. Perry opined:

It is the examiner's opinion that based on the assessment results and all information available, Ms. McCormick **is still at Maximum Medical Improvement** in regard to her aggravation of pre-existing anxiety disorder condition.

* * *

The estimated Whole Person Impairment arising from her allowed aggravation of pre-existing anxiety disorder condition is estimated to be at a twenty-six (26%) level.

* * *

The attached Occupational Activity Assessment Form indicates this examiner's opinion that Ms. McCormick's impairments arising from her allowed aggravation of pre-existing anxiety disorder condition would result in her **not being able to work**.

(Emphasis sic.)

{¶ 23} 13. On July 20, 2015, Dr. Perry completed a form captioned "Occupational Activity Assessment, Mental & Behavioral Examination." On the form, Dr. Perry indicated by his mark "[t]his Injured Worker is incapable of work." In the space provided, Dr. Perry wrote in his own hand:

It is this examiner's advisory opinion that the mental limitations resulting from her allowed condition of aggravation of pre-existing anxiety disorder as described on pages 7 and 8 of the attached report would indicate that Ms. McCormick is incapable of work.

{¶ 24} 14. On July 23, 2015, at the commission's request, relator was examined by Richard J. Reichert, M.D. In his four-page narrative report dated July 29, 2015, Dr. Reichert opines:

*Based on the <u>AMA Guides to the Evaluation of Permanent Impairment</u>, Fifth Edition, 2001, and with reference to the <u>Industrial Commission Medical Examination Manual</u>, this individual has evidence for 5% of Whole Person Impairment. This is based on assignment of DRE Lumbar Category II. This individual has nonverifiable radicular complaints without objective findings. The*

> *individual's sensory loss and symptoms of radiculopathy are nonanatomical in nature and in a nondermatomal distribution. Therefore the most appropriate assignment is Lumbar Category II. It is noted that this is based on the lumbar conditions including both the lumbar sprain/strain and aggravation of pre-existing degenerative disk disease at L4-5.*

(Emphasis sic.)

{¶ 25} 15. On July 28, 2015, Dr. Reichert completed a form captioned "Physical Strength Rating." On the form, Dr. Reichert indicated by his mark that relator is capable of "sedentary work." For further limitations, Dr. Reichert wrote in the space provided: "Allow alternating between sit and standing position as tolerated."

{¶ 26} 16. Following a November 16, 2015 hearing, an SHO issued an order denying the PTD application. The SHO's order explains:

> The Hearing Officer finds that the Injured Worker's request for a finding of permanent total disability status which was filed on 05/29/2015, is denied.
>
> The Hearing Officer finds that the Injured Worker has not presented sufficient probative evidence to establish that she is permanently and totally disabled based on the medical documentation, and the lack of vocational rehabilitation efforts in file.
>
> This order is based on the medical documentation from Douglas Waltman, Ph.D. dated 01/19/2014.
>
> The Hearing Officer further finds that on 06/06/2003 the Injured Worker indicates that she was observing a patient trying to climb in the bed with the side rails up, she asked the patient to stand so she could put the guard rail down, and she hooked her right arm under the patient's arm and the patient started to get up and then went down and the Injured Worker was injured when she held onto the patient, trying not to let her fall to the floor.
>
> The Injured Worker has had no surgeries as a result of the allowed conditions in this claim, has had approximately $175,000 in total medical and indemnity and last received

temporary total compensation on 02/14/2014. The Injured Worker has received a 38% permanent partial disability.

The Hearing Officer finds that the Injured Worker is not to be considered permanently and totally disabled based on the physical examination from Richard Reichert, M.D., dated 07/29/2015, and the report pursuant to the psychological conditions by Dr. Waltman.

Dr. Waltman in his report dated 01/19/2014, indicates that based on his psychiatric examination, the Injured Worker has a history of problems with anxiety and depression which began prior to 2003. She admitted to Dr. Waltman that she had occasional panic attacks prior to the injury upon which this claim is predicated, and having panic attacks in her 20's. Donald Weinstein, Ph.D.'s evaluation of 2010 confirms that the Injured Worker's panic symptoms pre-existed the injury and that she also had bouts of depression following one of her two divorces. He also found the Injured Worker rates her symptoms for monetary gain. She indicated to Dr. Waltman that she gets hyper when she gets upset and indicated that she kept getting fired from employment. The doctor goes on to indicate that she sought medical help constantly because of her chronic fatigue and was sad over her second divorce. Dr. Waltman indicates that based on his review of an evaluation conducted by Alf Bergman, M.D. on 11/17/2013, he did not observe any type of difficulty with the Injured Worker's concentration or memory. In addition a psychological evaluation conducted by James Lyall, Ph.D., on 06/16/2011, indicated that it was his assessment as an expert in cognitive functioning that he found no evidence of impairments in concentration or memory. Dr. Waltman also indicated that a[n] examination conducted by Eugene O'[B]rien, M.D., in a report dated 06/03/2012, that the Injured Worker had met the clinical criteria of generalized anxiety disorder, but that said condition pre-existed her injury upon which this claim is predicated. Dr. Waltman in his evaluation indicates that it is his opinion that the Injured Worker had reached maximum medical improvement based on the fact that she has made significant gains and cannot be expected to improve further. Based on the fact that the Injured Worker had a pre-existing anxiety disorder superimposed upon a personality disorder, Dr. Waltman, asked if the Injured Worker can return to work Dr. Waltman indicated "no, but not due to the injury of record. Claimant does not feel confident in her ability to return safely to

nursing. She feels she will be fired again for problems with concentration. Completing paper work[,] and taking to[o] long to perform tasks." In addition Dr. Waltman indicates "because she cannot take responsibility for her own character weaknesses she attributes her barriers to things she thinks are beyond her control (ie.) problems with memory and concentration."

The doctor also indicates that the Injured Worker is an "individual with a pre-existing anxiety disorder who tends to exaggerate the extent of her symptoms for secondary gain, such as to receive disability benefits." In addition although this claim is approximately 13 years old the Injured Worker has not attempted any vocational rehabilitation in this matter.

Dr. Reichert who indicated that he examined the Injured Worker for the allowed physical conditions in this claim, indicated that the Injured Worker had reached maximum medical improvement for the allowed physical conditions in this claim.

He indicated that the Injured Worker had a 5% whole person impairment for the allowed physical condition and that the Injured Worker was capable of working in a sedentary type classification.

The Hearing Officer finds that based on the fact that Injured Worker cannot be deemed permanently and totally disabled based totally on the allowed physical and psychological conditions, a discussion of the Injured Worker's non-medical disability factors is in order.

The Hearing Officer finds that at this time the Injured Worker is receiving social security disability benefits, as of 03/2011.

The Injured Worker's age is 60 which indicates closely approaching advanced age, and is a negative factor in the Injured Worker obtaining entry level positions.

The Injured Worker's education consists of going through the Summa St. Thomas School of Nursing and graduating as a registered nurse. The Hearing Officer finds that the Injured Worker's education is a positive factor in that the Injured Worker has gone through, as indicated, an RN course.

The Hearing Officer finds that the Injured Worker's occupations consisted of working as a nursing home RN, working at a hospice center and also working as an RN case manager.

The Injured Worker was a RN, used computers and as indicated, was a supervisor of other RN's. She also supervised six aides and two LPNs at a job that she did not list the date for, and could not remember. The Injured Worker's education and work experience are considered positive factors in her obtaining entry level positions.

The Hearing Officer finds that based on the medical documentation in file from Dr. Waltman, in a report dated 01/19/2014, analyzing the Injured Worker on the allowed psychological conditions and the 07/29/2015 report of Dr. Reichert, examining the Injured Worker for the allowed physical conditions, that the Injured Worker has not presented sufficient probative evidence to establish that she is permanently and totally disabled and therefore her application is denied.

As indicated based on the medical documentation in file, the Injured Worker is not to be deemed permanently and totally disabled.

{¶ 27} 17. On December 19, 2015, the three-member commission mailed an order denying relator's request for reconsideration of the SHO's order of November 16, 2015.

{¶ 28} 18. On February 12, 2016, relator, Jennifer McCormick, filed this mandamus action.

Conclusions of Law:

{¶ 29} Three issues are presented: (1) is the report of Dr. Waltman some evidence on which the commission can rely in its adjudication of the PTD application when the report was generated in response to the bureau's concern over relator's continued receipt of TTD compensation; (2) did the commission abuse its discretion by failing to explain why it did not rely on the reports of Drs. Perry, Oberle, and Richetta; (3) does the SHO's order of November 16, 2015 comply with the command of Ohio Adm.Code 4121-3-34(D)(3)(i) that "[t]he adjudicator shall consider whether the allowed psychiatric

condition in combination with the allowed physical condition prevents the injured worker from engaging in sustained remunerative employment?"

{¶ 30} The magistrate finds: (1) the report of Dr. Waltman is some evidence on which the commission can rely; (2) the commission did not abuse its discretion in failing to explain why it did not rely on the reports of Drs. Perry, Oberle, and Richetta; and (3) the SHO's order of November 16, 2015 complies with Ohio Adm.Code 4121-3-34(D)(3)(i).

{¶ 31} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.

### First Issue

{¶ 32}        *State ex rel. Bray v. Hamilton Fixture Co.,* 10th Dist. No. 05AP-821, 2006-Ohio-4459, is dispositive.

{¶ 33}        Sharon Bray sustained physical injuries on May 30, 1997 while employed as a carpenter for Hamilton Fixture Company.  Her industrial claim was additionally allowed for a psychological disorder, i.e., "adjustment disorder with depressed mood."  *Id.* at ¶ 2.

{¶ 34}        Bray received TTD compensation from the bureau.  On August 20, 2001, at the bureau's request, Bray was examined by psychologist Chris H. Modrall, Ph.D. In his report, Dr. Modrall opined that the allowed psychological condition had reached maximum medical improvement ("MMI").  He also opined that Bray "could return to work from a purely psychological standpoint." *Bray* at ¶ 24.  Dr. Modrall advised that she could return to work "on a staggered basis" where she would work "for a few hours the first week, one-half a day the next week and then return full-time." *Id.* at ¶ 24.

{¶ 35}        In September 2001, citing Dr. Modrall's report, the bureau moved to terminate TTD compensation.  Following an October 2001 hearing, a DHO terminated TTD compensation based in part on Dr. Modrall's report.

{¶ 36}        In August 2002, Bray filed an application for PTD compensation.  In support, Bray submitted a report from treating psychiatrist Thor Tangvald, M.D., who opined that Bray should be "considered permanently and totally disabled from returning to any type of employment." *Id.* at ¶ 26.

{¶ 37}        In October 2002, at the commission's request, Bray was examined by Ron M. Koppenhoefer, M.D., for the allowed physical conditions of the claim.  In his

narrative report, Dr. Koppenhoefer opined that Bray was physically "able to do sedentary/light duty work activities." *Id.* at ¶ 27.

{¶ 38}      In November 2002, at the commission's request, Bray was examined by psychiatrist Donald L. Brown, M.D.  In his narrative report, Dr. Brown opined that Bray has "a Class III level of impairment. This is a moderate level of impairment." *Id.* at ¶ 29.  On the occupational activity assessment form, Dr. Brown indicated that Bray can return to her former position of employment, and can perform any sustained remunerative employment. *Id.* at ¶ 30.

{¶ 39}      The commission requested an "employability assessment report" from Howard L. Caston, Ph.D., a vocational expert.  *Id.* at ¶ 32.  In his report dated December 20, 2002, Dr. Caston opined that Bray could return to employment.  *Id.* at ¶ 33.

{¶ 40}      Following a July 2003 hearing, an SHO issued an order denying Bray's PTD application.  The order states reliance on the reports of Drs. Modrall, Koppenhoefer, and Caston.

{¶ 41}      In August 2005, Bray filed in this court a mandamus action seeking to vacate the commission's order and to have the commission enter an order granting the PTD application.

{¶ 42}      In that original action, Bray argued that the commission erred in relying on Dr. Modrall's report in denying PTD compensation because it was generated by the bureau's concern over Bray's continued entitlement to TTD compensation.

{¶ 43}      In arguing that Dr. Modrall's report must be eliminated from evidentiary consideration in the PTD determination, Bray relied on *State ex rel. Kaska v. Indus. Comm.*, 63 Ohio St.3d 743 (1992).  This court rejected Bray's argument that *Kaska* compelled elimination of Dr. Modrall's report.

{¶ 44} Here, relator fails to cite or discuss this court's decision in *Bray.*  However, the commission relied on *Bray* in its brief.  Relator did not file a reply brief to counter the commission's argument that *Bray* is dispositive.

{¶ 45} Clearly, *Bray* is dispositive of this action.

{¶ 46} Here, as was the case in *Bray,* the report at issue was generated by the bureau's concern over the injured worker's continued entitlement to TTD compensation. That is, the report at issue was not prompted in either case by the filing of the PTD

application. Thus, the situation here with respect to Dr. Waltman's report is similar to the situation in *Bray* with respect to Dr. Modrall's report. Neither the report of Dr. Modrall nor the report of Dr. Waltman were prepared in response to the PTD application. Just as in *Bray,* however, the report at issue here is indeed some evidence on which the commission can rely to deny the PTD application.

{¶ 47} It can be noted that Dr. Waltman's report, in effect, addresses residual functional capacity, Ohio Adm.Code 4121-3-34(B)(4), with respect to the allowed psychological condition. Residual functional capacity was at issue in the PTD adjudication.

{¶ 48} In his report, Dr. Waltman opines that relator's work limitations are primarily the result of non-allowed "personality weaknesses that would interfere with her work performance in any work setting." Dr. Waltman concludes "there [is] no evidence her allowed psychological condition would interfere with her work performance at the present time."

{¶ 49} Clearly, based on the above analysis, Dr. Waltman's report does address the residual functional capacity issue in the PTD determination, and it was appropriate for the commission to rely on Dr. Waltman's report in the adjudication of the PTD application.

### Second Issue

{¶ 50} The second issue is whether the commission abused its discretion by failing to explain why it did not rely on the reports of Drs. Perry, Oberle, and Richetta.

{¶ 51} In *State ex rel. Bell v. Indus. Comm.*, 72 Ohio St.3d 575 (1995), the Supreme Court of Ohio succinctly set forth the law applicable to the second issue presented here. In *Bell,* the injured worker brought a mandamus action challenging the commission's denial of his PTD application. The *Bell* court states:

> Claimant also suggests that, henceforth, *all* commission orders be made to set forth the reasons for finding one report more persuasive than another. Claimant's argument, as a broad proposition, is weakened by *State ex rel. Mitchell v. Robbins & Myers, Inc.* (1984), 6 Ohio St.3d 481, 6 OBR 531, 453 N.E.2d 721, and *Noll, supra. Noll* requires only a brief explanation of the commission's reasoning. *Mitchell* instructs the commission to list in its orders the evidence on

> which it relied. Moreover, later decisions have stressed that a reviewing court is not aided by a recitation of evidence that was considered but not found persuasive. *See, e.g., State ex rel. DeMint v. Indus. Comm.* (1990), 49 Ohio St.3d 19, 550 N.E.2d 174. Logic dictates that if the identity of rejected evidence is irrelevant, so is the reason for rejection.

*Id.* at 577-78.

{¶ 52} In *State ex rel. Lovell v. Indus. Comm.*, 74 Ohio St.3d 250 (1996), the injured worker brought a mandamus action challenging the commission's denial of his VSSR application. In the commission's order denying the VSSR application, the commission failed to mention or address his deposition testimony. The *Lovell* court states:

> Because the deposition was not included in that list, claimant argues that pursuant to *State ex rel. Fultz v. Indus. Comm.* (1994), 69 Ohio St.3d 327, 631 N.E.2d 1057, we must assume that the deposition was overlooked. This is incorrect.
>
> *State ex rel. Mitchell v. Robbins & Myers, Inc.* (1983), 6 Ohio St.3d 481, 6 Ohio B. Rep. 531, 453 N.E.2d 721, directed the commission to cite in its orders the evidence on which it relied to reach its decision. Reiterating the concept of reliance, *State ex rel. DeMint v. Indus. Comm.* (1990), 49 Ohio St.3d 19, 20, 550 N.E.2d 174, 176, held:
>
> "*Mitchell* mandates citation of only that evidence <u>relied</u> on. It does not require enumeration of all evidence <u>considered</u>." (Emphasis original.)
>
> Therefore, because the commission does not have to list the evidence considered, the presumption of regularity that attaches to commission proceedings (*State ex rel. Brady v. Indus. Comm.* [1990], 28 Ohio St.3d 241, 28 Ohio B. Rep. 322, 503 N.E.2d 173) gives rise to a second presumption-- that the commission indeed considered all the evidence before it. That presumption, however, is not irrebuttable as *Fultz* demonstrates.

*Id.* at 252

{¶ 53} As earlier noted, at the commission's request, relator was examined by psychologist Dr. Perry, who opined that relator is incapable of work.

{¶ 54} As earlier noted, at relator's own request, she was examined by Dr. Oberle who opined that relator "should be declared permanently and totally disabled as a result of her injuries."

{¶ 55} As earlier noted, at relator's own request, she was examined by psychologist Dr. Richetta, who opined that relator is "permanently and totally disabled due to the allowed aggravation of Pre-Existing Anxiety Disorder alone."

{¶ 56} Obviously, the reports of Drs. Perry, Oberle, and Richetta were favorable to relator's PTD application. Moreover, Dr. Perry was asked by the commission to examine relator.

{¶ 57} As earlier noted, the SHO's order of November 16, 2015 relied exclusively on the reports of Drs. Waltman and Reichert in determining residual functional capacity. The order does not mention the reports of Drs. Perry, Oberle, or Richetta. Without citation to authority, relator contends that the commission abused its discretion in failing to address the reports of Drs. Perry, Oberle, and Richetta. As relator puts it, the commission "abused its discretion by ignoring the report of its own doctor." (Relator's Brief at 17.)

{¶ 58} There is no evidence in the record to show that the commission failed to consider or ignored the report of its own doctor or, for that matter, that it failed to consider the reports of Drs. Oberle and Richetta. The commission's order at issue is entitled to the presumption of regularity explained by the court in *Lovell.*

{¶ 59} Accordingly, based on the above analysis, the magistrate concludes that the commission did not abuse its discretion in failing to explain why it did not rely on the reports of Drs. Perry, Oberle, or Richetta.

### Third Issue

{¶ 60} The third issue is whether the SHO's order of November 16, 2015 complies with Ohio Adm.Code 4121-3-34(D)(3)(i), which provides:

> In claims in which a psychiatric condition has been allowed and the injured worker retains the physical ability to engage in some sustained remunerative employment, the adjudicator shall consider whether the allowed psychiatric condition in combination with the allowed physical condition prevents the injured worker from engaging in sustained remunerative employment.

{¶ 61} In *State ex rel. Guy v. Indus. Comm.,* 10th Dist. No. 08AP-711, 2009-Ohio-2553, this court had occasion to interpret Ohio Adm.Code 4121-3-34(D)(3)(i).  This court stated:

> In the end, relator's contentions invoke the formerly required "combined effects" review that arose when the claimant presented both physical and psychological dimensions in a request for disability compensation. Under such a review, typically a single doctor assessed a claimant's ability in light of the combined effects of the allowed physical and psychological conditions. Ohio Adm.Code 4121-3-34(D)(3)(i) does not require a "combined effects" review, but rather that the conditions be considered in combination.

*Id.* at ¶ 8.

{¶ 62} Although not cited by this court's decision in *Guy,* a historical discussion of the combined-effect rule set forth in *State ex rel. Anderson v. Indus. Comm.*, 62 Ohio St.2d 166 (1980), can be found in *State ex rel. Rouch v. Eagle Tool & Machine Co.*, 26 Ohio St.3d 197 (1986).

{¶ 63} Clearly, as this court indicates in *Guy,* Ohio Adm.Code 4121-3-34(D)(3)(i), cannot be viewed as a return to the *Anderson* combined-effect rule.

{¶ 64} Here, the Hearing Officer's order of November 16, 2015 indicates reliance on the report of Dr. Waltman who examined solely for the allowed psychiatric or psychological condition and the report of Dr. Reichert who examined only for the allowed physical conditions of the claim.  The SHO indicates that, based on Dr. Reichert's report on the physical conditions, relator is "capable of working in a sedentary type classification."  Also, as indicated earlier, Dr. Waltman concluded in his report:

> [T]his worker's limitations at this point are primarily the result of pre-existing personality weaknesses that would interfere with her work performance in any work setting. This includes problems with work tardiness, abrasiveness, and insubordination. These problems probably pre-existed her injury and were probably not exacerbated by her injury. Otherwise, there [is] no evidence her allowed psychological condition would interfere with her work performance at the present time.

{¶ 65} The SHO's order indicates reliance on the reports of Drs. Waltman and Reichert in determining residual functional capacity. The SHO determined that the physical and psychiatric conditions of the claim permit sustained remunerative employment.

{¶ 66} The SHO's order states:

> The Hearing Officer finds that based on the fact that Injured Worker cannot be deemed permanently and totally disabled based totally on the allowed physical and psychological conditions, a discussion of the Injured Worker's non-medical disability factors is in order.

{¶ 67} Thus, the SHO's order of November 16, 2015 complies with Ohio Adm.Code 4121-3-34(D)(3)(i). *Guy.*

{¶ 68} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

> Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).