[Cite as *State ex rel. Urban v. Wano Expiditing Inc.*, 2024-Ohio-2461.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Randall Urban, | : | |
| Relator, | : | No. 22AP-164 |
| v. | : | (REGULAR CALENDAR) |
| Wano Expiditing Inc. et al., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on June 27, 2024

**On brief:** *Schaffer and Associates*, *L.P.A.*, *Thomas J. Schaffer*, and *Rachael Fortlage*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *David M. Canale*, for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

EDELSTEIN, J.

{¶ 1} Respondent, the Industrial Commission of Ohio ("commission"), denied relator Randall Urban's application for permanent total disability ("PTD") compensation on the basis that Mr. Urban is capable of sustained remunerative employment at a sedentary level. Mr. Urban seeks a writ of mandamus from this court ordering the commission to vacate its order and enter a new order granting the compensation.

{¶ 2} For the following reasons, we sustain Mr. Urban's objection and grant the requested writ of mandamus.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 3} In February 2006, Mr. Urban was injured while lifting and unloading packages as a delivery driver employee of Wano Expiditing Inc. ("Wano"). His workers'

compensation claim was allowed for various lumbar-spine medical conditions, left foot drop, depressive disorder, and anxiety disorder. Despite undergoing four surgeries to repair his back injuries, Mr. Urban has continued to struggle with chronic pain. (*See* June 2, 2022 Stip. Evid. at 5-6, 41-47.) And although he has been engaged in psychotherapy and medication management for his allowed psychological conditions for over nine years, Mr. Urban continues to experience mood instability, irritability, social isolation, and feelings of hopelessness. (*See* Stip. Evid. at 5-6, 66-73.)

### A. The 2021 Application for PTD Compensation

{¶ 4}   In April 2021, Mr. Urban applied for PTD compensation. In his application, Mr. Urban reported that he used a cane to walk and stand as needed and that his psychological conditions of depression and anxiety impacted his ability to work. (Stip. Evid. at 41-47.) Mr. Urban further reported that he could lift up to five pounds, drive a vehicle for less than one hour at a time, walk less than a block at a time, stand for five to ten minutes at a time, and sit for one hour or less at a time. (Stip. Evid. at 42.) Mr. Urban described being "in constant pain[,] which, in turn, has made [him] horribly depressed, angry[,] and anxious." (Stip. Evid. at 43.) He also reported that he required assistance to lift and carry items when doing laundry or grocery shopping. Mr. Urban also noted that although he can do "small, easy" tasks around the home, he cannot mow, vacuum, or do anything that requires him to stand for an extended period of time. (Stip. Evid. at 43.)

{¶ 5}   Before working for Wano, Mr. Urban held other shipping and receiving jobs that generally required him to perform the same types of tasks he performed at Wano— heavy lifting, extensive standing, bending, and loading. It is undisputed that Mr. Urban is medically incapable of returning to his former position of employment. At issue in this case is whether he is medically able to perform other work at the sedentary level.

{¶ 6}   In support of his application for PTD compensation, Mr. Urban submitted a report from occupational medicine specialist Michael K. Riethmiller, M.D., J.D., who performed an independent medical evaluation of Mr. Urban on January 28, 2021. (Stip. Evid. at 29-40.)   Based on his review of the available medical records, which are summarized in his report, and his independent medical evaluation, Dr. Riethmiller opined, in pertinent part, as follows:

> Based upon a review of the available medical records and this independent medical evaluation, it is my medical opinion within a reasonable degree of medical probability that due to

the allowed conditions in this claim, Mr. Urban is unable to engage in sustained remunerative employment and therefore would be considered permanently and totally disabled. This opinion is based upon the fact that he has undergone four lumbar spine surgical procedures without any even minimal relief in his symptomatology. He has recently been diagnosed with a recurrent L5-S1 disc herniation and will require further intensive care. If he were to attempt a return to very restricted work duties, he would experience increase in his pain which would require the use of even more narcotic and neuropathic pain medications which would result in further sedation and lack of focus. Given his left foot drop, the sedation and lack of focus could result in a fall due to his left foot drop.

(Stip. Evid. at 40.)

{¶ 7} In further support of his PTD application, Mr. Urban also submitted a report from his attending psychiatrist, Jane Broering-Ammons, M.D., dated October 5, 2020. (Stip. Evid. at 5-6.) Dr. Broering-Ammons noted that, "[b]ased on my over nine years of consistent psychiatric treatment of Mr. Urban, I do not believe he can return to the work-place * * * [and] believe to a reasonable degree of medical certainty Mr. Urban cannot engage in remunerative employment in any capacity due to his [allowed] psychological condition." (Stip. Evid. at 6.)

{¶ 8} Dr. Harvey A. Popovich, M.D., an independent medical examiner specializing in occupational medicine, examined Mr. Urban at the commission's request on June 29, 2021. In his corresponding report, Dr. Popovich opined that Mr. Urban has reached maximum medical improvement "with respect to the allowed *physical* conditions" and has 32 percent whole-person impairment. (Emphasis added.) (Stip. Evid. at 62-63.) While noting that Mr. Urban is limited with sitting and standing for "prolonged periods" and "need[s] the ability to change positions between sitting and standing on an as necessary basis," Dr. Popovich nonetheless opined "that with respect to the allowed *physical* conditions in this claim, [Mr. Urban] is capable of sedentary work." (Emphasis added.) (Stip. Evid. at 64.)

{¶ 9} Mr. Urban was also independently evaluated by clinical psychologist Mark A. Babula, Psy.D. at the commission's request on August 2, 2021. Although noting that Mr. Urban has been using medications and psychotherapy to treat his allowed psychological conditions for several years and more recently began meeting with an anger management specialist, Dr. Babula ultimately opined in his report dated August 10, 2021 that Mr.

Urban's psychological treatment "appears to have plateaued." (Stip. Evid. at 72.) Dr. Babula concluded that Mr. Urban is capable of work with the following limitations or modifications:

> He would need a position with low stress, to prevent him from getting overwhelmed. He would need the ability to take breaks from coworkers, customers, or tasks when feeling overwhelmed, requiring an environment to which he could escape and take a break, such as 30 minutes, or switch to a task in another area that removes him from the source of stress.

(Stip. Evid. at 73.)

{¶ 10} Finally, Mr. Urban's vocational consultant, Anne Savage Veh, authored a report on September 14, 2021 opining that Mr. Urban lacks the capacity to engage in sustained remunerative employment given the limitations associated with ***both*** his physical limitations and psychological conditions. (Stip. Evid. at 74-80.) Ms. Veh disagreed with Dr. Popovich's opinion that Mr. Urban could work at a sedentary level with limitations on bending, squatting, standing, walking, frequent sitting, and needing to change positions between sitting and standing. (Stip. Evid. at 79.) In doing so, she noted that Mr. Urban cannot stand for more than five to ten minutes at one time, must change positions frequently, and needs to lie down frequently. (Stip. Evid. at 79.) Ms. Veh further opined that the Functional Capacity Evaluation indicated Mr. Urban could only function at a sedentary level on a part-time basis. (Stip. Evid. at 79.)

{¶ 11} Taken with the Dr. Babula's suggested accommodation for Mr. Urban's allowed psychological condition—30-minute breaks or tasks in another area to get away from workplace stressors, which Ms. Veh opined "would not generate any productive pace and would not be adjusted for the worker" (Stip. Evid. at 80)—Ms. Veh also noted the following:

> An employer is unlikely to allow an employee to stand up and take a break every 30 minutes as it would not produce completion of job tasks in a timely or productive manner. Moreover, his severe lack of sitting tolerance will only further complicate a job where he must perform duties at a desk or station.
>
> Due to his injuries, limitations, need to frequently change positions, and the impact of chronic pain on activities of daily living, any retraining would be ineffective.

(Stip. Evid. at 80.) In Ms. Veh's opinion, "no employer can be expected to accommodate [these] restriction[s]." (Stip. Evid. at 79.)

{¶ 12} Ms. Veh ultimately opined that Mr. Urban is "100% totally unemployable" "due to his physical and exertional limitations[;] depressive disorder and its impact on his daily life[;] less than sedentary level of work[;] severe, constant, chronic pain[;] and the extensive absence from the workforce (15 years)." (Stip. Evid. at 80.) Ms. Veh thus concluded that Mr. Urban "does not retain the capacity to engage in sustained, remunerative employment" given his physical and psychological conditions. (*See* Stip. Evid. at 80.)

### B. The Commission's Denial of Mr. Urban's PTD Application

{¶ 13} Following a hearing on October 20, 2021, a staff hearing officer ("SHO") of the commission denied Mr. Urban's application for PTD compensation. (*See* Stip. Evid. at 81-83.) Although the SHO briefly summarized Dr. Babula's opinion on Mr. Urban's ability to work in light of the residual effects of his allowed psychological conditions in her decision, the SHO's relevant findings on PTD eligibility focused almost exclusively on Mr. Urban's *physical* capacity to return to work, as outlined in Dr. Popovich's report. (*See* Stip. Evid. at 81-83.)

{¶ 14} After noting that Mr. Urban was "found to be at maximum medical improvement for the allowed psychological condition on 06/26/2019 and for the allowed physical conditions on 08/13/2020," the SHO also found that Mr. Urban "is able to perform at least at a sedentary work [level]." (Stip. Evid. at 81-82.) The SHO thus found that "[t]he restrictions given by Dr. Popovich are consistent with Sedentary [sic] work." (Stip. Evid. at 82.)

{¶ 15} Regarding the nonmedical disability factors, the SHO deemed Mr. Urban's age at the time of the hearing (46 years) and work history to be positive factors and his education (high-school graduate) to be a neutral factor. While finding the presence of transferable skills—namely, driving, following instructions, and problem solving—stemming from Mr. Urban's work experience exclusively involved manual labor, the SHO noted that Mr. Urban "would benefit from additional training in able to [sic] find a job that does not involve manual labor." (Stip. Evid. at 82.) The SHO also observed that Mr. Urban "would benefit from training and certifications in order to finds [sic] a job within his restrictions." (Stip. Evid. at 82.) And although the SHO further found that Mr. Urban "is a

good candidate for retraining based on his age," the SHO did not consider Mr. Urban's ability to obtain additional training, retraining, and/or certifications in light of his physical limitations **and** psychological conditions. (*See* Stip. Evid. at 81-82.)

{¶ 16} Considering Mr. Urban's "residual, physical capacity to return to at least sedentary work activity" with his nonmedical disability factors, the SHO concluded that Mr. Urban "is capable of [returning to] sustained remunerative employment and is not * * * permanently and totally disabled." (Stip. Evid. at 82.) The SHO further found that Mr. Urban failed to establish that he "is permanently and totally disabled due to conditions in this claim" because Mr. Urban "retains some residual physical capacity to work and the [nonmedical disability factors] do not preclude a return to some form of sustained remunerative employment." (Emphasis added.) (Stip. Evid. at 82.)

### C. The Mandamus Action

{¶ 17} Mr. Urban filed a complaint in mandamus with this court, alleging that the commission abused its discretion by "failing to consider [Mr. Urban's] residual functional capacity based upon all of the allowed conditions in the claim"—namely, psychological—and in relying on Dr. Popovich's report that Mr. Urban was capable of performing sedentary work. (Mar. 14, 2022 Compl. at ¶ 15, 21.)

{¶ 18} Pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who issued the appended decision, including findings of fact and conclusions of law. The magistrate found that the commission did not abuse its discretion and the commission's order was supported by some evidence, and recommended that we deny Mr. Urban's petition for a writ of mandamus. (Appended Mag.'s Decision at ¶ 88-89.)

{¶ 19} Mr. Urban now objects to the magistrate's determination that there was some evidence to support the commission's denial of PTD compensation. (*See* Oct. 5, 2023 Objs. of Relator.) Specifically, Mr. Urban takes issue with the magistrate's finding that the SHO sufficiently considered "whether the allowed psychiatric condition(s) in combination with the allowed physical condition(s) prevents the injured worker from engaging in sustained remunerative employment," as required by Ohio Adm.Code 4121-3-34(D)(3)(i), in resolving Mr. Urban's PTD compensation application. (*See* Appended Mag.'s Decision at ¶ 87-88.)

{¶ 20} Mr. Urban's objection to the magistrate's decision was timely filed under Civ.R. 53(D)(3)(b). We are therefore required to independently review the objected to matters and evaluate whether "the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d).

## II. LEGAL STANDARDS

### A. Mandamus Standard

{¶ 21} An order of the commission that grants or denies PTD compensation concerns the extent of a claimant's disability and, as such, is not subject to appeal. *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 42 Ohio St.2d 278, 281 (1975); R.C. 4123.512(A). To be entitled to a writ of mandamus, Mr. Urban must establish that he has a clear legal right to the requested relief and that the commission has a clear legal duty to provide it. *State ex rel. Zarbana Indus. v. Indus. Comm.*, 166 Ohio St.3d 216, 2021-Ohio-3669, ¶ 10. To do so, Mr. Urban must demonstrate that the commission abused its discretion by entering an order that is not supported by "some evidence" in the record. *State ex rel. McCormick v. McDonald's*, 141 Ohio St.3d 528, 2015-Ohio-123, ¶ 11.

{¶ 22} The commission is the exclusive finder of fact and has the sole responsibility to evaluate the weight and credibility of the evidence. *State ex rel. Perez v. Indus. Comm.*, 147 Ohio St.3d 383, 2016-Ohio-5084, ¶ 20. *See also* Ohio Adm.Code 4121-3-34(D)(3)(c). "Where a commission order is adequately explained and based on some evidence, even evidence that may be persuasively contradicted by other evidence of record, the order will not be disturbed as manifesting an abuse of discretion." *State ex rel. Mobley v. Indus. Comm.*, 78 Ohio St.3d 579, 584 (1997). This means that, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion, and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56, 58 (1987).

### B. PTD Compensation

{¶ 23} " 'Permanent total disability' means the inability to perform sustained remunerative employment due to the allowed condition(s) in the claim(s)." Ohio Adm.Code 4121-3-34(B)(1). PTD shall be compensated when "[t]he impairment resulting from the employee's injury * * * prevents the employee from engaging in sustained remunerative employment utilizing the employment skills that the employee has or may reasonably be expected to develop." R.C. 4123.58(C)(2). Work is considered "sustained"

when it consists of an "ongoing pattern of activity." (Citations omitted.) *State ex rel. Bonnlander v. Hamon*, 150 Ohio St.3d 567, 2017-Ohio-4003, ¶ 15. Though, "[t]he work need not be regular or even daily; it may be intermittent and occasional, and it may be part-time." *State ex rel. Kidd v. Indus. Comm.*, 173 Ohio St.3d 298, 2023-Ohio-2975, ¶ 18, citing *Bonnlander* at ¶ 15.

{¶ 24} Section 4121-3-34(B)(2) of the Ohio Administrative Code classifies work that a claimant may be found capable of performing based on its physical demands. "Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met." Ohio Adm.Code 4121-3-34(B)(2)(a). "Work is also sedentary if it involves 'exerting up to ten pounds of force occasionally ([i.e.,] up to one-third of the time) and/or a negligible amount of force frequently ([i.e.,] from one-third to two-thirds of the time).' " *Kidd* at ¶ 19, quoting Ohio Adm.Code 4121-3-34(B)(2)(a).

{¶ 25} Each application for PTD compensation based on physical limitations or impairments must be supported by medical evidence from a physician or, in claims where psychiatric or psychological condition(s) have been allowed, a psychologist or psychiatric specialist. *See* Ohio Adm.Code 4121-3-34(C)(1).

{¶ 26} If the commission determines that the claimant is medically incapable of returning to his or her former position of employment but is medically able to perform other work, the commission must also consider nonmedical disability factors. Ohio Adm.Code 4121-3-34(D)(2)(b). These include:

> the injured worker's age, education, work record, and all other factors, such as physical, psychological, and sociological, that are contained within the record that might be important to the determination as to whether the injured worker may return to the job market by using past employment skills or those skills which may be reasonably developed.

Ohio Adm.Code 4121-3-34(D)(2)(b). *See also State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167, 173 (1987) (setting forth these nonmedical disability factors, which are now commonly referred to as "the Stephenson factors"). Accordingly, even if the injured worker is medically capable of some employment, these nonmedical factors may nevertheless support an award of PTD compensation. *See Stephenson* at 172.

{¶ 27} If the SHO finds that an injured worker with allowed psychiatric or psychological conditions "retains the physical ability to engage in some sustained

remunerative employment," Ohio Adm.Code 4121-3-34(D)(3)(i) requires the SHO to further "consider whether the allowed psychiatric condition(s) in combination with the allowed physical condition(s) prevents the injured worker from engaging in sustained remunerative employment."[1] Mr. Urban's sole objection contends the SHO failed to comply with this administrative provision in resolving his application for PTD compensation.

## III. ANALYSIS

{¶ 28} We begin our analysis by first noting that Mr. Urban does not object to the magistrate's finding that the commission properly relied on Dr. Popovich's report to find that Mr. Urban was able to perform sustained remunerative employment at a sedentary level. (*See* Appended Mag.'s Decision at ¶ 82-86.) "If no timely objections are filed, the court may adopt a magistrate's decision unless [the court] determines that there is an error of law or other defect evident on the face of the magistrate's decision." Civ.R. 53(D)(4)(c).

{¶ 29} In his mandamus complaint, Mr. Urban alleged that Dr. Popovich's opinion was "inconsistent [with] the definition of sedentary work outlined in Ohio Administrative Code § 4121-3-34(B)(2)(a)." (Compl. at ¶ 21.) But, based on the recent holding of *Kidd*, 2023-Ohio-2975, the magistrate rejected that contention. (Appended Mag.'s Decision at ¶ 86.) Our review of the magistrate's decision reveals no error of law or other defect as to that finding. Thus, we agree with the magistrate's finding that Dr. Popovich's report regarding Mr. Urban's **physical** limitations constituted some evidence that Mr. Urban may maintain sustained remunerative employment at a sedentary level.[2]

---

[1] We note that "psychological conditions" and "psychiatric conditions" are used without distinction in the reports presented in this case. We also note that Chapter 4121-3 of the Ohio Administrative Code—including other subsections of Ohio Adm.Code 4121-3-34—refer to either or both "psychological conditions" and "psychiatric conditions" without any clear or appreciable distinction. Neither are defined in Chapter 4121-3 of the Ohio Administrative Code and we have applied Ohio Adm.Code 4121-3-34(D)(3)(i) in cases where "psychological conditions" have been allowed. *See, e.g.*, *State ex rel. McCormick v. Indus. Comm.*, 10th Dist. No. 16AP-107, 2017-Ohio-370, ¶ 8, 61-67 (adopting magistrate's decision finding that the SHO's order complies with Ohio Adm.Code 4121-3-34(D)(3)(i). For purposes of this decision and our application of Ohio Adm.Code 4121-3-34(D)(3)(i), we intend and understand "psychiatric conditions" and "psychological conditions" as meaning and referring to the same thing.

[2] We note, however, that unlike the report of Mr. Urban's independent medical examiner, Dr. Riethmiller, regarding additional limitations associated with his allowed physical conditions, Dr. Popovich's report contains no discussion of the impact of Mr. Urban's November 2020 diagnosis with a recurrent L5-S1 disc herniation. (*Compare* Stip. Evid. at 39-40, *with* Stip. Evid. at 58-59.) Dr. Riethmiller noted this "will require further intensive care" and opined that, if Mr. Urban "were to attempt a return to very restricted work duties, he would experience increase in his pain which would require the use of even more narcotic and neuropathic pain medications which would result in further sedation and lack of focus." (Stip. Evid. at 40.) Dr. Riethmiller also observed that, "the sedation and lack of focus could result in a fall due to [Mr. Urban's] left foot drop." (Stip. Evid. at 40.)

{¶ 30} However, Dr. Popovich's opinion that Mr. Urban "retains the *physical* ability to engage in some sustained remunerative employment" could not, alone, be a basis for denying Mr. Urban's PTD compensation application. (Emphasis added.) *See* Ohio Adm.Code 4121-3-34(D)(3)(i). This is because psychological conditions—depression and anxiety—have been allowed for Mr. Urban's workers' compensation claim. *See id.* Thus, the SHO was also required to "consider whether the allowed psychiatric condition(s) in combination with the allowed physical condition(s) prevents the injured worker from engaging in sustained remunerative employment." *See id.*

{¶ 31} On this basis, Mr. Urban objects to the magistrate's finding that the commission did not abuse its discretion in denying his PTD compensation application. Specifically, Mr. Urban maintains the SHO failed to engage in the analysis required by Ohio Adm.Code 4121-3-34(D)(3)(i) and that any consideration given to his psychological conditions in combination with his physical limitations was fundamentally inadequate because the SHO only acknowledged some—but not all—of Dr. Babula's limitations.

{¶ 32} On review, we note the magistrate did not make any explicit findings concerning Mr. Urban's contention that the SHO failed to comply with Ohio Adm.Code 4121-3-34(D)(3)(i). Indeed, we observe the magistrate's decision does not reference or apply that provision of the administrative code. *Compare State ex rel. Guy v. Indus. Comm.*, 10th Dist. No. 08AP-711, 2009-Ohio-2553, ¶ 27-37 (magistrate's evaluation of whether SHO's decision complied with Ohio Adm.Code 4121-3-34(D)(3)(i)). Instead, the magistrate predominately addressed Mr. Urban's secondary contention that the SHO failed to account for all of Dr. Babula's limitations when resolving his PTD compensation claim. Citing to the sole paragraph in the SHO's decision discussing some—but not all—of Dr. Babula's findings regarding Mr. Urban's psychological conditions, the magistrate found that "when combined with the physical findings from Dr. Popovich's report, * * * there was some evidence to support the denial of PTD." (Appended Mag.'s Decision at ¶ 87-88.) The magistrate thus concluded "the commission did not abuse its discretion when it relied upon Dr. Babula's report." (Appended Mag.'s Decision at ¶ 88.)

{¶ 33} Admittedly, case law interpreting Ohio Adm.Code 4121-3-34(D)(3)(i) is considerably limited. However, our analysis in *Guy*, is instructive. Like Mr. Urban, the injured worker in *Guy* "had both psychological and physical aspects to his request for [PTD] compensation" and argued to this court that, in denying his application for PTD

compensation for his industrial injury, the SHO failed to comply with Ohio Adm.Code 4121-3-34(D)(3)(i). *Id.* at ¶ 4-5. And, just as in this case, the SHO's decision in *Guy* relied on reports from two doctors: one addressed the injured worker's physical restrictions while the other opined on the injured worker's psychological functional capacity. *See id.* at ¶ 5, 28. But, on thorough examination of the SHO's decision in *Guy*, we concluded it complied Ohio Adm.Code 4121-3-34(D)(3)(i). *Id.* at ¶ 6. On review of the SHO's decision in this case, however, we cannot say the same.

{¶ 34} In *Guy*, we noted the SHO assessed the injured worker's residual functional capacity by relying on the reports of Dr. Mease (physical limitations) and Dr. Chatterjee (psychological conditions). *Id.* at ¶ 5, 28. Ohio Adm.Code 4121-3-34(B)(4) defines "residual functional capacity" to mean "the maximum degree to which the injured worker has the capacity for sustained performance of the physical-mental requirements of jobs as these relate to the allowed conditions of the claim(s)." *See also Guy* at ¶ 5, 28. Of note, and discussed more thoroughly below, the SHO's decision in this case contained no mention of "residual functional capacity."

{¶ 35} In determining the injured worker's residual functional capacity, the SHO's order in *Guy* acknowledged that "Dr. Mease opined that relator can perform 'light and sedentary work levels.' " *Id.* at ¶ 29. In that same paragraph, the SHO acknowledged that "Dr. Chatterjee limits relator to 'all but the most non-stressful/non-demanding of jobs,' and also opined that the injured worker's 'adaptive capacity is poor.' " *Id.* at ¶ 29. In the next paragraph, the SHO opined that, based on those reports, "[t]he Injured Worker retains the ***residual functional capacity*** to perform sustained remunerative employment at the sedentary and light work levels, physically and some sustained remunerative employment, as limited per Dr. Chatterjee's opinion." (Emphasis added.) *Id.* at ¶ 6, 30. After determining the injured worker's nonmedical disability factors, the SHO in *Guy* concluded by stating that, based on "the above findings," and when considering the injured worker's nonmedical disability factors "in conjunction with the medical restrictions and limitations as opined by Drs. Mease and Chatterjee," the injured worker "retain[ed] the capacity to perform sustained remunerative employment at the sedentary and light work levels." (Citation omitted.) *Id.* at ¶ 7, 18.

{¶ 36} We concluded in *Guy* that "[a]s a whole, the [SHO's] decision complies with the administrative provision that requires the allowed psychiatric condition to be

considered in combination with the allowed physical condition." *Id.* at ¶ 6-7. We further rejected the injured worker's contention that Ohio Adm.Code 4121-3-34(D)(3)(i) required a "combined effects" review by a single doctor who assessed a claimant's ability in light of the combined effects of the allowed physical and psychological conditions. *Id.* at ¶ 8. Rather, we held in *Guy* that Ohio Adm.Code 4121-3-34(D)(3)(i) only required the conditions be considered in combination. *Id.*

{¶ 37} On review of the SHO's decision in this case, however, we cannot say the same necessary level of consideration was given to Mr. Urban's physical and psychological conditions as was given by the SHO in *Guy*. As described above, the SHO received reports from Mr. Urban's treating psychiatrist, Dr. Broering-Ammons, and the commission's independent clinical psychologist, Dr. Babula, that described limitations associated with Mr. Urban's psychological conditions. Regarding Mr. Urban's physical limitations, the SHO received reports from Mr. Urban's independent medical examiner, Dr. Riethmiller, and the commission's independent medical examiner, Dr. Popovich. Additionally, the vocational report from Ms. Veh opined that Mr. Urban's physical and psychological conditions render him without "the capacity to engage in sustained, remunerative employment." (Stip. Evid. at 80.)

{¶ 38} In resolving Mr. Urban's PTD compensation application, the SHO relied on the report of Dr. Babula with respect to Mr. Urban's psychological conditions and Dr. Popovich's opinion addressing Mr. Urban's physical limitations. To be clear, we do not find the SHO was required to rely, list, or otherwise discuss any other reports. Rather, the issue is that in summarizing and analyzing the limitations stated in these two reports, the SHO failed to acknowledge the full extent of Mr. Urban's physical and psychological limitations. This undoubtedly impacted the propriety of the SHO's analysis of "whether the allowed psychiatric condition(s) in combination with the allowed physical condition(s) prevents the injured worker from engaging in sustained remunerative employment," as required by Ohio Adm.Code 4121-3-34(D)(3)(i).

{¶ 39} Noticeably absent from the SHO's decision in this case is any mention of the phrase "residual functional capacity," which is a unique phrase specifically defined in the PTD compensation section of the Ohio Administrative Code chapter outlining the procedure for workers' compensation claims. *See* Ohio Adm.Code 4121-3-34(B)(4.) In the order, the SHO makes findings concerning Mr. Urban's "functional capacity" once and his

"residual physical capacity" twice. (Stip. Evid. at 82.) Neither "functional capacity" nor "residual physical capacity" is specifically defined in any relevant provision of the administrative code.

{¶ 40} This distinction is salient because, in *Guy*, the injured worker's primary contention was that the SHO's "description of residual functional capacity in terms of physical capacity rather than in terms of both physical and psychological capacity" in "three of the last four paragraphs of the SHO's order" evidenced the SHO's failure to comply with Ohio Adm.Code 4121-3-34(D)(3)(i). *See Guy*, 2009-Ohio-2553 at ¶ 32-35. In rejecting that argument, the magistrate found that "the SHO made it clear early in the order that residual functional capacity included [the psychological limitations]," and we adopted that finding. *See id.* at ¶ 5-8, 30-31, 36.

{¶ 41} Conversely, the SHO's decision in this case did not contain any findings related to Mr. Urban's "residual functional capacity" or otherwise clearly indicate that her capacity findings included Dr. Babula's limitations regarding Mr. Urban's psychological conditions. *Compare Guy* at ¶ 5-6. True, the SHO found that Mr. Urban "retains a functional capacity to perform sustained remunerative employment with the limitations contained in the doctors' reports." (Stip. Evid. at 82.) And, we recognize this finding was based on the SHO's summary of the reports from Drs. Popovich and Babula that immediately preceded it. (Stip. Evid. at 82.)

{¶ 42} However, even construing the SHO's use of "functional capacity" as meaning and referring to "residual functional capacity," as defined in Ohio Adm.Code 4131-3-34(B)(4), our review of these two reports reveals the SHO acknowledged some—***but not all***—of the restrictions each doctor reported. (*See* Stip. Evid. at 82.) We thus turn to Mr. Urban's argument that the SHO's determination of his PTD compensation claim was deficient because the SHO failed to consider "the entirety of Psychologist Dr. Babula's restrictions in combination with the physical restrictions opined by Dr. Popovich." (Objs. of Relator at 4.)

{¶ 43} The SHO summarized Dr. Popovich's opinion regarding Mr. Urban's physical restrictions as stating that Mr. Urban "is limited in his ability to lift, ambulate, push, pull, carry, kneel[,] and climb" but "can sit and stand, with break periods." (Stip. Evid. at 82.) But, on review, we find that Dr. Popovich recognized more considerable limitations than just those summarized by the SHO. Dr. Popovich noted that Mr. Urban's ability to sit and

stand "for prolonged periods is * * * limited." (Stip. Evid. at 64.) Dr. Popovich also opined that Mr. Urban would "need the ability to change positions between sitting and standing on an as necessary basis." (Stip. Evid. at 64.) Though, we recognize Mr. Urban's physical limitations—including those not mentioned by the SHO—could be largely ameliorated with a sit/stand desk. (*See* Appended Mag.'s Decision at ¶ 86, discussing the modern innovations in office equipment that provide workers the ability to change positions at their convenience described by the SHO in *Kidd*, 2023-Ohio-2975.)

{¶ 44} In the next paragraph, the SHO then described Dr. Babula's report addressing Mr. Urban's psychological conditions as requiring "breaks from co-worker[s] and to avoid feeling overwhelmed." (Stip. Evid. at 82.) But, on review, we again note that Dr. Babula recommended more significant limitations than those summarized by the SHO. Specifically, Dr. Babula opined that Mr. Urban "would need a position with low-stress, to prevent him from getting overwhelmed" and "would need the ability to take breaks from coworkers, customers, ***or tasks*** when feeling overwhelmed, requiring an environment to which he could escape and take a break, such as 30 minutes, or switch to a task in another area that removes him from the source of the stress." (Emphasis added.) (Stip. Evid. at 73.)

{¶ 45} Suffice it to say that taking breaks from tasks—as opposed to just people—requires employer flexibility in an entirely different regard. Yet, the SHO's decision makes no mention of this limitation. The magistrate concluded that Mr. Urban's need for "breaks from coworkers and to avoid feeling overwhelmed" were the "two restrictions" at the "crux of Dr. Babula's findings." (Appended Mag.'s Decision at ¶ 88.) And while that is generally correct, in application, the full implication of Dr. Babula's finding regarding Mr. Urban's need for breaks to avoid feeling overwhelmed was lost in both the SHO's decision and the magistrate's review. Accommodating Mr. Urban's need for breaks from ***coworkers*** is relatively simple in that it can be achieved with spatial solutions—e.g., work-from-home, private office, or other physical barriers. And though potentially preclusive in some respects (namely, the customer service industry) and not acknowledged in the SHO's decision, we nonetheless observe there are many sedentary level jobs that can accommodate Mr. Urban's need for breaks from ***customers***.

{¶ 46} What is more considerable—though not addressed by either the SHO or the magistrate—is Dr. Babula's limitation requiring Mr. Urban have the ability to take breaks,

"such as 30 minutes," from ***tasks*** when feeling overwhelmed. (Stip. Evid. at 73.) Because the SHO did not acknowledge this significant psychological restriction, we agree with Mr. Urban that the SHO failed to consider the full extent of Dr. Babula's limitation: Mr. Urban's ability to take breaks from coworkers, customers, ***and*** tasks when feeling overwhelmed—the need for which could arise under different circumstances throughout the workday.

{¶ 47} It is true, as the commission notes, that "the commission is only required to state what evidence it relied upon and a brief explanation as to why the claimant is or is not entitled to the requested benefits." (Memo of Respondent at 8, citing *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203, 204 (1991).) But, given the considerable extent of the psychological limitations not acknowledged in the SHO's decision—and particularly in light of the absence of any reference to Dr. Babula's limitations outside of the one summary paragraph—we find the SHO failed to properly consider all of Mr. Urban's psychological conditions in combination with his physical limitations, as required by Ohio Adm.Code 4121-3-34(D)(3)(i). *Compare Guy*, 2009-Ohio-2553 at ¶ 5-7, 29-37 (describing SHO's acknowledgement and consideration of injured worker's psychological limitations in multiple parts of SHO's decision).

{¶ 48} We note this case is distinguishable from *Guy* in several significant respects. Unlike Mr. Urban, the injured worker in *Guy* did not attribute error to the SHO's failure to consider all of the limitations associated with his psychological conditions when resolving his PTD compensation request. Notably, too, the psychological limitations addressed in *Guy*—"all but the most non-stressful/non-demanding of jobs" and requiring little to no adaptive capacity, *id.* at ¶ 29—are different in both kind and degree from Mr. Urban's need for breaks from coworkers, customers, and tasks when feeling overwhelmed.

{¶ 49} Indeed, we believe that Mr. Urban's need for considerable spatial, task type, and break flexibility throughout the workday far exceeds both the SHO's summary and the magistrate's review of Dr. Babula's limitations. (*See* Stip. Evid. at 82; Appended Mag.'s Decision at ¶ 87-88.) True, "Dr. Babula's restriction to jobs with low stress in his report is implicit in the SHO's finding that [Mr. Urban] needs to avoid feelings of being overwhelmed." (Appended Mag.'s Decision at ¶ 88.) But, the magistrate's finding that "the SHO's statement that [Mr. Urban] would need breaks from coworkers generally summarizes Dr. Babula's restriction that [Mr. Urban] would require the ability to escape to take a break for 30 minutes" fails to appreciate—just as the SHO's decision—the full extent

of Dr. Babula's limitations. (Appended Mag.'s Decision at ¶ 88.) Dr. Babula opined that Mr. Urban "would need the ability to take breaks from coworkers, customers, or tasks when feeling overwhelmed, requiring an environment to which he could escape and take a break, such as 30 minutes, or switch to a task in another area that removes him from the source of the stress." (Stip. Evid. at 73.) Because the SHO described Dr. Babula's report as finding that Mr. Urban's "psychological limitations did not affect his ability to complete basic tasks" and did not acknowledge Dr. Babula's task-related psychological limitations (*see* Stip Evid. at 82), we cannot infer the SHO appreciated and, thus, considered the full scope of Mr. Urban's psychological restrictions when evaluating his PTD compensation claim.

{¶ 50} As such, the magistrate's finding that Mr. Urban "would not necessarily need a break from work-related activities if the employer permitted him to work on another task away from the stressor" is not entirely consistent with the record before us. (*Compare* Appended Mag.'s Decision at ¶ 88, *with* Stip. Evid. at 73.) For this same reason, we also reject the magistrate's determination that "Ms. Veh's conclusion that an employer's accommodation for Dr. Babula's restrictions would not generate any productive pace" is "without basis, given the employer may be able to assign him a new job task away from the stressor with no loss of productivity." (Appended Mag.'s Decision at ¶ 88.)

{¶ 51} We further disagree with the magistrate's finding that "there is no indication of the frequency of the need for such breaks" such that Mr. Urban's argument "that any such breaks would be inconsistent with sustained remunerative employment is without basis." (Appended Mag.'s Decision at ¶ 88.) To the contrary, Dr. Babula's limitation that Mr. Urban "would need the ability to take breaks * * * ***when feeling overwhelmed***" indicates the frequency of the need is on an "as-needed" basis. (Emphasis added.) (*See* Stip. Evid. At 73.) And, on that point, we note that Mr. Urban's treating psychiatrist of more than nine years provided an insight on the frequency of such feelings when she opined that she did "not believe he can return to the work-place" and "cannot engage in remunerative employment in any capacity" because of his psychological conditions. (*See* Stip. Evid. at 6.)

{¶ 52} Based on the foregoing and our independent review of the record, we do not find that the SHO's decision, as a whole, complied with Ohio Adm.Code 4121-3-34(D)(3)(i)'s requirement that allowed psychological conditions to be considered in combination with the allowed physical conditions when assessing an injured worker's application for PTD compensation. Contrary to the dissent's claim, we do not purport to

"suggest to the commission what weight and credibility it should accord" to any providers' report. (*See* Dissent at ¶ 66-68.) Rather, we merely require the commission to comply with the review contemplated by Ohio Adm.Code 4123-3-34(D)(3)(i). By summarizing some—but not all—of the psychological limitations contained in the report on which the SHO's order relied, we are not convinced the SHO fully analyzed whether the entirety of Dr. Babula's restrictions in combination with the physical restrictions opined by Dr. Popovich rendered Mr. Urban eligible for permanent total disability compensation.

{¶ 53} In addition to the SHO's apparent failure to consider all of Dr. Babula's limitations, our determination that the SHO failed to engage in the analysis Ohio Adm.Code 4121-3-34(D)(3)(i) requires is reinforced by the absence of any reference to Ohio Adm.Code 4121-3-34(D)(3)(i) or its operative language in the SHO's decision. And although not required, the SHO's failure to make any mention, either positive or negative, of Ms. Veh's report—the only piece of evidence containing opinions relevant to the analysis required by Ohio Adm.Code 4121-3-34(D)(3)(i)—further supports our conclusion that the SHO did not properly analyze the entirety of Dr. Babula's restrictions in combination with the physical limitations opined by Dr. Popovich when the SHO denied Mr. Urban's application for PTD compensation.

{¶ 54} Consequently, Mr. Urban's sole objection to the magistrate's decision is sustained.

## IV. DISPOSITION

{¶ 55} For these reasons and following our independent review of the record pursuant to Civ.R. 53, we find no error in the magistrate's conclusion that Mr. Urban's contention that Dr. Popovich's report constituted some evidence supporting the commission's determination that Mr. Urban can perform sustained remunerative employment at a sedentary level. Nor do we find any error in the magistrate's recitation of the facts supporting that conclusion of law.

{¶ 56} We do, however, find error in the magistrate's recitation of facts regarding Dr. Babula's limitations, as described above. We further find the magistrate erred in applying the pertinent law to the relevant facts and finding the SHO's decision complied with Ohio Adm.Code 4121-3-34(D)(3)(i). As such, we reject the magistrate's finding that the commission's denial of Mr. Urban's PTD compensation application was not an abuse of discretion.

{¶ 57} We therefore sustain Mr. Urban's sole objection to the magistrate's decision and grant his request for a writ of mandamus. Accordingly, the commission shall vacate its order denying Mr. Urban's PTD compensation application and enter a new order that adjudicates the PTD compensation application in a manner consistent with this decision and the Ohio Administrative Code.

*Objection sustained;*
*writ of mandamus granted.*

BOGGS, J., concurs.
DORRIAN, J., dissents.

DORRIAN, J., dissenting.

{¶ 58} I respectfully dissent from the majority decision. I would overrule relator's objections and adopt the magistrate's decision including the findings of fact and conclusions of law. I would find the commission did not abuse its discretion and the commission's order was supported by some evidence. I would deny relator's request for a writ of mandamus.

{¶ 59} To begin, I generally observe that "[i]n an order granting or denying benefits, the commission 'must specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision.' " *State ex rel. Sours v. MGQ, Inc.*, 10th Dist. No. 22AP-31, 2023-Ohio-4289, ¶ 8, quoting *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991). The Supreme Court of Ohio has held that the commission complies with these requirements if it specifies the evidence on which it relied and "explains the reasoning the commission used to reach its decision in such a manner as to enable meaningful judicial review." *Id.* The Supreme Court has further held "[a]lthough the commission is required to consider all of the evidence before it, it is not required to list each piece of evidence considered in its decision [and] there is a presumption of regularity in the commission's proceedings and a presumption that the commission considered all evidence before it." *Id.*, citing *State ex rel. Digiacinto v. Indus. Comm.*, 159 Ohio St.3d 346, 2020-Ohio-707, ¶ 16. In the case before us, the SHO specifically summarized and analyzed the medical reports of Dr. Harvey A. Popovich, M.D. and Dr. Mark Babula, Psy.D, and based on those reports concluded relator "retains a functional capacity to perform sustained remunerative employment with limitations contained in the doctors' reports [and] is able to perform at least at a sedentary work [level]." (Stip. Evid. at 81-82; appended Mag.'s Decision at ¶ 76.) I would find the commission complied with the requirements to state what evidence has

been relied on and to briefly explain the reasoning for its decision in such a manner as to enable meaningful judicial review. I would further find it was not necessary for the SHO to list each piece of evidence it considered.

{¶ 60} In *Sours*, the Supreme Court noted that the order of an SHO (1) stated "all evidence was reviewed and considered in rendering the decision," and (2) "listed all allowed conditions." *Id*. at ¶ 9. The court concluded Sours had not presented any specific evidence to rebut the presumption of regularity in the commission's proceedings or the presumption that the commission considered all the evidence before it. In the case before us, the SHO expressly stated "[a]ll of the evidence was reviewed and considered in rendering this decision." (Stip. Evid. at 82.) Furthermore, the SHO listed all the allowed conditions ("It is the finding of the Staff Hearing Officer that this claim has been allowed for: HERNIATED DISC L3-L4 L4-L-5; DEPRESSIVE DISORDER; ANXIETY DISORDER; LUMBAR DISC DISPLACEMENT L5-S1; LUMBAR RADICULOPATHY; LEFT FOOT DROP; FACET JOINT DISEASE L3-L4; FACET JOINT DISEASE L4-L5; FACET JOINT DISEASE L5-S1.") (Stip. Evid. at 81; Appended Mag.'s Decision at ¶ 71.) I would find relator had not presented any specific evidence to rebut the presumption of regularity in the commission's proceedings or the presumption that the commission considered all the evidence before it.

{¶ 61} In *Sours*, the Supreme Court also held that an SHO is not required to list in a decision those reports on which the SHO did not rely. *Id*. at ¶ 9. In *State ex rel. Packaging Corp. of Am. v. Indus. Comm.*, 139 Ohio St.3d 591, 2014-Ohio-2871, ¶ 26, the Supreme Court noted that the commission "chose not to rely on the more thorough report [of a physician] that the district hearing officer had cited." Nevertheless, the court held:

> [T]he commission has exclusive responsibility for evaluating the weight and credibility of the evidence before it. It is not required to identify or explain the evidence it did not rely upon or why one piece of evidence was considered more persuasive than another. Thus, it was not necessary for the commission to expressly discuss [what the court considered to be the more thorough report of the physician upon which commission did not rely]. And it is not an abuse of discretion for the commission to rely on evidence that is contradicted by equally persuasive evidence.

(Citations omitted.) *Id*. at ¶ 26. In the case before us, I would find it was not necessary for the SHO to expressly discuss the reports of Dr. Michael K. Riethmiller or Dr. Jane Broering-

Ammons no matter whether the majority found their reports to be more thorough or persuasive.

{¶ 62} To continue, I address the majority's particular concerns with the case before us. The majority remands this case to the commission because it finds "the SHO failed to properly consider all of [relator's] psychological conditions in combination with his physical limitations, as required by Ohio Adm.Code4121-3-34(D)(3)(i)." (Majority opinion at ¶ 47; 38.)

{¶ 63} First, I do not agree with the majority's determination that the SHO did not comply with Ohio Adm.Code 4121-3-34(D)(3)(i). Ohio Adm.Code 4121-3-34(D)(3)(i) states:

> In claims in which a psychiatric condition(s) has been allowed and the injured worker retains the physical ability to engage in some sustained remunerative employment, the adjudicator shall consider whether the allowed psychiatric condition(s) in combination with the allowed physical condition(s) prevents the injured worker from engaging in sustained remunerative employment.

{¶ 64} I would find the SHO did comply with Ohio Adm.Code 4121-3-34(D)(3)(i). In the paragraph immediately following the SHO's discussion of Dr. Popovich's report and opinion regarding physical limitations and Dr. Babula's report and opinion of psychological limitations, the SHO stated:

> The Hearing Officer finds based on the above analysis the Injured Worker retains a functional capacity to perform sustained remunerative employment *with limitations contained in the doctors' reports*. The Hearing Officer finds the Injured Worker is able to perform at least at a sedentary work [level]. The restrictions given by Dr. Popovich are consistent with Sedentary work.

(Emphasis added.) (Stip. Evid. at 82.)

{¶ 65} The SHO also discusses the psychological and physical conditions at another place in the order when it noted relator was found to be at "maximum medical improvement for the allowed psychological condition on 06/26/2019 and for the allowed physical conditions on 08/13/2020." (Stip. Evid. at 82; or Majority opinion at ¶ 14.) Furthermore, I do not agree with the majority's comparison of this case to *State ex rel. Guy v. Indus. Comm.*, 10th Dist. No. 08AP-711, 2009-Ohio-2553. The majority takes issue with the fact

that in *Guy*, the SHO assessed the injured worker's residual functional capacity; whereas, in the case before us the SHO's decision contained no mention of residual functional capacity.   I agree the SHO's order in the case before us contained no mention of the term "residual functional capacity," but rather referred to "functional capacity," "residual, physical capacity" and "residual physical capacity."  (Stip. Evid. at 82.) *See* Ohio Adm.Code 4121-3-34(B)(4):

> "Residual functional capacity" means the maximum degree to which the injured worker has the capacity for sustained performance of the physical-mental requirements of jobs as these relate to the allowed conditions in the claim(s).

Given the SHO's discussion of the physical and psychological conditions as I noted above, I would construe the SHO's decision as having considered "residual functional capacity" despite not using the exact terminology and despite not specifically referencing Ohio Adm.Code 4121-3-34(D)(3)(i).

{¶ 66} Second, I do not agree with the majority's determination that the SHO failed to acknowledge the full extent of relator's physical and psychological limitations.   The majority takes issue with the SHO not summarizing Dr. Popovich's "more considerable limitations." (Majority opinion at ¶ 43.)  The majority also takes issue with the SHO not considering the full extent of Dr. Babula's limitations and ultimately concludes "we find the SHO failed to properly consider all of [relator's] psychological conditions in combination with his physical limitations, as required by Ohio Adm.Code 4121-3-34(D)(3)(i)." (Majority opinion at ¶ 47.)  It seems that with this finding, the majority intends to suggest to the commission what weight and credibility it should accord to Dr. Babula's report.  The majority also refers the commission to the report of Dr. Broering-Ammons—upon which the commission did not rely—for insight on the frequency of relator feeling overwhelmed. The majority states "[a]nd, on that point [the frequency of the need to take breaks when feeling overwhelmed], we note that [relator's] treating psychiatrist of more than nine years [Dr. Broering-Ammons] provided an insight on the frequency of such feelings when she opined that she did 'not believe he can return to the work-place' and 'cannot engage in remunerative employment in any capacity' because of his psychological conditions." (Majority opinion at ¶ 51, quoting Dr. Broering-Ammons' report; Stip. Evid. at 6.)  Again, it seems that with this reference, the majority intends to suggest to the commission to give

more weight and credibility to Dr. Broering-Ammons' report than it did. Finally, the majority complains the SHO did not make any mention of the report of Ms. Veh, the vocational expert, which the majority characterizes as "the only piece of evidence containing opinions relevant to the analysis required by Ohio Adm.Code 4121-3-34(D)(3)(i)." (Majority opinion at ¶ 53.) Once again, it seems that with this reference the majority intends to suggest to the commission to give more weight and credibility to Ms. Veh's report than it did.

{¶ 67} For the reasons I articulate above, I dissent from the majority's determination the SHO erred and that it is necessary to grant the writ of mandamus and remand this case to the commission. However, I must further note that, if I were inclined to concur with the majority's determination that the SHO erred in its evaluation of Dr. Babula's and Dr. Popovich's reports, I would still dissent from the majority's suggestions on remand that the commission must give more weight and credibility to the reports of Drs. Riethmiller, and Broering-Ammons, and Ms. Veh.

{¶ 68} As to the reports of Drs. Riethmiller and Broering-Ammons, this court's case law holds that on remanding for a limited writ, this court could not require acceptance of the findings and conclusions of physicians on which the commission had previously not relied. In *State ex rel. Heilman v. Indus. Comm.*, 10th Dist. No. 21AP-353, 2023-Ohio-3073, ¶ 36, this court found that a report of a reviewing physician on which the commission had relied could not be considered some evidence to support its conclusion to deny compensation because the reviewing physician did not base his medical opinion on the factual findings of the examining physicians. *Id*. at ¶ 27. This court granted a limited writ and specifically stated that notwithstanding the remand, the claimant was not necessarily entitled to compensation based on a physician's report on which the commission had not previously relied because the commission is "not required to accept [that physician's] factual findings or conclusions." *Id*. at ¶ 36. We emphasized that this court lacked the authority to determine the weight and credibility of the remaining evidence, including the report of the physician on which it had previously not relied. "Requiring the commission to accept the factual findings contained in a medical report and to adopt the conclusions therein as the commission's own 'would be tantamount to allowing a physician to determine disability rather than the commission.' " *Id*. As to the report of Ms. Veh, Ohio Adm.Code 4121-3-34(C)(1) states that "[a] vocational expert's opinion, by itself, is

insufficient to support an application for permanent total disability [compensation]." Furthermore, the commission is free to accept all, some, or none of the findings in a vocational report. *State ex rel. Lacroix v. Indus. Comm.*, 10th Dist. No. 12AP-931, 2013-Ohio-4881, ¶ 13, citing *State ex rel. Culbert v. Indus. Comm.*, 10th Dist. No. 11AP-172, 2012-Ohio-1217, ¶ 3, citing *State ex rel. Gen. Motors, L.L.C. v. Indus. Comm.*, 10th Dist. No. 10AP-855, 2011-Ohio-4922, ¶ 38.

{¶ 69} Accordingly, for the reasons set forth above, I respectfully dissent from the majority's decision to grant relator's objections and grant relator's request for a writ of mandamus. I would overrule relator's objections, adopt the magistrate's decision, and deny relator's request for a writ of mandamus.

_____

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Randall Urban, | : | |
| Relator, | : | |
| v. | : | No. 22AP-164 |
| Wano Expiditing Inc. et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

MAGISTRATE'S DECISION

Rendered on September 21, 2023

*Schaffer and Associates*, *L.P.A.*, *Thomas J. Schaffer*, and *Rachael Fortlage*, for relator.

*Dave Yost*, Attorney General, and *David M. Canale*, for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 70} Relator, Randall Urban ("claimant"), has filed this original action requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order that denied his request for permanent total disability ("PTD") compensation, and to enter an order granting the compensation.

Findings of Fact:

{¶ 71} 1. On February 8, 2006, claimant sustained an industrial injury in the course of and arising out of his employment with respondent, Wano Expiditing Inc. ("employer"), when he experienced low back pain while unloading packages. His workers' compensation

claim was allowed for herniated disc L3-L4 and L4-L5; depressive disorder; anxiety disorder; lumbar disc displacement L5-S1; lumbar radiculopathy, left foot drop; facet joint disease L3-L4; facet joint disease L4-L5; and facet joint disease L5-S1. Claimant underwent four surgeries for his lower back.

{¶ 72} 2. On April 12, 2021, claimant filed an application for PTD compensation.

{¶ 73} 3. In a June 29, 2021, report, Harvey A. Popovich, M.D., found the following: (1) claimant has reached maximum medical improvement ("MMI") with regard to his physical conditions; (2) he is not amenable to further treatment; consequently, no fundamental functional or physiologic change is anticipated; (3) claimant has a combined whole-person impairment of 32 percent; (4) claimant has functional deficits in the areas of lifting, ambulating, pushing, pulling, carrying, kneeling, and climbing; (5) sitting and standing for prolonged periods is limited; (6) claimant is capable of sedentary work; (7) no limitations are identified with respect to use of the upper extremities to grasp, hold, feel, or handle, to communicate, to drive, or to provide basic selfcare; (8) claimant needs the ability to change positions between sitting and standing on an as-necessary basis; and (9) claimant reported he could sit for one-half hour at a time, stand for five minutes at a time, and walk for half of one block. On the attached physical strength rating form, Dr. Popovich indicated claimant could engage in sedentary work, which is defined, in pertinent part, as sitting most of the time, but may involve walking or standing for brief periods of time. The form indicated that jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

{¶ 74} 4. In an August 10, 2021, report, Mark Babula, Psy.D., found the following: (1) claimant has reached MMI; (2) claimant has a whole person impairment of 37 percent; and (3) with regard to claimant's residual mental and behavioral capacity, claimant's concentration remains intact; his psychological impairments do not prohibit him from completing many basic tasks; his thinking tends to be concrete; he experiences irritation, which can impair social aspects of job positions; and he can grow overwhelmed, requiring breaks or avoidance of others. Dr. Babula's occupational activity assessment indicates that claimant is capable of work in a position with low stress to prevent him from getting overwhelmed and with the ability to take breaks from coworkers, customers, or tasks when feeling overwhelmed, requiring an environment to which he could escape and take a break,

such as 30 minutes, or switch to a task in another area that removes him from the source of stress.

{¶ 75} 5. In a September 14, 2021, vocational assessment, Ann Savage Veh, MA, LSW, LPCC-S, found the following: (1) due to claimant's significant physical and exertional limitations and severe, chronic pain, he is precluded from returning to any of his former occupations; (2) the functional capacity evaluation indicated that claimant is only able to function at a sedentary level of physical demand in a job but only on a parttime basis; adding the restriction of the limitation with bending, squatting, standing, and walking, as well as frequent sitting (for one hour), only makes it more difficult for an employer to accommodate; (3) claimant cannot perform the physical demand expectation of bending and stooping while working in a sedentary position; (4) claimant is unable to sit for more than an hour in an eight-hour workday; (5) claimant cannot stand for more than 5 to 10 minutes at one time, as required by the sedentary category; (6) claimant must change positions frequently through the day and needs to use a sit/stand/walk process; (7) due to constant pain, claimant must lie down more than frequently throughout a day, and no employer can be expected to accommodate this restriction; (8) Dr. Babula indicated that claimant would be able to take breaks of up to 30 minutes from coworkers or other staff if feeling overwhelmed; this accommodation would not generate any productive pace and would not be adjusted for the worker; (9) an employer is unlikely to allow an employee to stand up and take a break every 30 minutes as it would not produce completion of job tasks in a timely or productive manner; moreover, claimant's severe lack of sitting tolerance will only further complicate a job where he must perform duties at a desk or station; (10) due to his injuries, limitations, need to frequently change positions, and the impact of chronic pain on activities of daily living, any retraining would be ineffective; claimant was found to not be able to return to work due to increased pain and discomfort from bending, stooping, walking, sitting, and standing, and each action increased the level and severity of the pain; and (11) due to claimant's physical and exertional limitations, depressive disorder and its impact on his daily life, less than sedentary level of work, severe, constant, chronic pain, and his extensive 15-year absence from the workforce, claimant does not retain the capacity to engage in any sustained, remunerative employment, and he is 100 percent totally unemployable.

{¶ 76} 6. On October 20, 2021, a hearing was held before a staff hearing officer ("SHO"). In a November 5, 2021, order, the SHO denied claimant's request for PTD compensation and found the following: (1) claimant has not had the opportunity to participate in vocational rehabilitation, as it was found to be not feasible; (2) claimant has not looked for any work within his restrictions, returned to any form of employment, participated in any retraining program, or taken any measures to make reasonable efforts to enhance his rehabilitation for reemployment potential; (3) based upon Drs. Popovich and Babula, claimant retains a functional capacity to perform sustained remunerative employment with limitations contained in the doctors' reports; (4) claimant is able to perform at least at a sedentary work level; (5) the restrictions given by Dr. Popovich are consistent with sedentary work; (6) claimant's work history is a positive factor, and he has transferrable skills that could be utilized in an employment setting; (7) claimant's education is a neutral factor, and he would benefit from training and certifications in order to find a job within his restrictions; (8) claimant's age of 46 years is a positive factor, and he is a good candidate for retraining; (9) based on claimant's residual physical capacity to return to at least sedentary work activity, and considering claimant's work history and transferable skills, along with his potential for education and his age, claimant is capable of performing sustained remunerative employment and is not currently permanently and totally disabled; and (10) because claimant retains some residual physical capacity to work, and the factors in *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987), do not preclude a return to some form of sustained remunerative employment, claimant has not established that he is permanently and totally disabled due to the allowed conditions.

{¶ 77} 7. On March 14, 2022, claimant filed a petition for writ of mandamus, requesting that this court vacate the commission's order that denied claimant PTD compensation, and to enter an order granting the compensation.

Conclusions of Law and Discussion:

{¶ 78} The magistrate recommends that this court deny claimant's request for a writ of mandamus.

{¶ 79} In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of the law.

*State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). In matters before it, the commission is the exclusive evaluator of the weight and credibility of the evidence. *State ex rel. LTV Steel Co. v. Indus. Comm.*, 88 Ohio St.3d 284, 287 (2000). Therefore, to be entitled to an extraordinary remedy in mandamus, the relator must demonstrate, by clear and convincing evidence, that the commission abused its discretion by entering an order not supported by any evidence in the record. *State ex rel. WFAL Constr. v. Buehrer*, 144 Ohio St.3d 21, 2015-Ohio-2305, ¶ 12. Furthermore, a report that is internally inconsistent cannot be some evidence supporting the commission's decision. *State ex rel. Lopez v. Indus. Comm.*, 69 Ohio St.3d 445, 449 (1994).

{¶ 80} The relevant inquiry in a determination of PTD is the worker's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994). Generally, in making this determination, the commission must consider not only medical impairments but also the claimant's age, education, work record, and other relevant non-medical factors. *Stephenson.* Thus, a claimant's medical capacity to work is not dispositive if the claimant's non-medical factors foreclose employability. *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994). The claimant bears the burden of proving that the allowed conditions in the workers' compensation claim render the claimant unable to return to sustained remunerative employment. *State ex rel. McKee v. Union Metal Corp.*, 150 Ohio St.3d 223, 2017-Ohio-5541, ¶ 9.

{¶ 81} Ohio Adm.Code 4121-3-34(B)(2)(a) provides the following:

> (a) "Sedentary work" means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

{¶ 82} The magistrate will address claimant's second argument first. Claimant argues that the commission erred when it determined claimant was able to perform sustained remunerative employment at a sedentary level. Claimant relies largely upon *State ex rel. Libecap v. Indus. Comm.*, 10th Dist. No. 96APD01-29 (Sept. 5, 1996), *aff'd.*, 83 Ohio St.3d 178 (1998), for the proposition that a medical report that opines the worker is capable

of sedentary work but provides restrictions inconsistent with sedentary work cannot be relied upon by the commission to find the worker is capable of sustained remunerative employment at the sedentary level, unless the commission adequately resolves the apparent inconsistency. As applied here, claimant asserts that the commission relied upon Dr. Popovich's report, in which the doctor found that claimant could perform sedentary work but also found that claimant required the ability to change positions between sitting and standing on an as-necessary basis, which, according to claimant, involves breaks from sitting every 30 minutes and from standing every 5 minutes, for a total of 15 breaks every 8-hour shift. Claimant contends that while sedentary work allows for breaks from sitting for a brief period of time, 15 breaks during an 8-hour shift would far exceed what is allowable under sedentary work capability, citing *State ex rel. Kidd v. Indus. Comm.*, 10th Dist. No. 20AP-364, 2022-Ohio-450, ¶ 10 ("*Kidd I*").

**{¶ 83}** However, the magistrate finds that Dr. Popovich's report constituted some evidence that claimant may maintain sustained remunerative employment. The Supreme Court of Ohio recently found that *Libecap* "has no precedential value" and reversed our decision in *Kidd I. See State ex rel. Kidd v. Indus. Comm.*, ___ Ohio St.3d ___, 2023-Ohio-2975, ¶ 33 ("*Kidd II*"). In *Kidd II*, the worker was limited to standing for approximately 20 minutes, sitting for 20 to 30 minutes with changes in position, and walking one-half of one mile. A medical report by Dr. Sanjay S. Shah indicated that the worker could work at the sedentary level with additional restrictions, including the allowance of rest periods every 15 to 20 minutes for 1 to 2 minutes as needed during standing, sitting, or walking. The Supreme Court of Ohio found that the restrictions on the worker's capabilities were consistent with the Ohio Administrative Code's definition of "sedentary work." The court noted that, because Ohio Adm.Code 4121-3-34(B)(2) does not mention "rest periods" (or the like), there is no administrative or statutory authority for concluding that the imposition of a 1 to 2-minute "rest period" restriction is inconsistent with sedentary work. The court concluded that Dr. Shah's report was not internally inconsistent and that the commission was not precluded from relying on it as some evidence that the worker was medically capable of sedentary work.

**{¶ 84}** In addition to Dr. Shah's report, the SHO in *Kidd II* also considered that modern innovations in office equipment, such as sit/stand desks and wireless telephone technology, as well as work-from-home options, offered workers the ability to change

positions at their convenience. The court found no error, in this regard. The court explained that the issue before the commission was whether the impairment resulting from the worker's allowed injury permanently and totally prevented her from engaging in sustained remunerative employment utilizing the employment skills that she has or may reasonably be expected to develop. The court found that in determining whether the claimant is capable of returning to the job market, the commission is not precluded from considering whether jobs exist that are reasonably likely to accommodate a claimant's medical restrictions. Mindful that the evaluation of the weight and credibility of the evidence is left to the discretion of the commission within the context of each case; workers' compensation cases are largely fact-specific; not one test or analysis can be said to apply to each and every factual possibility; and there exists a preference for a flexible and analytically sound approach that eschews hard-and-fast rules, the court found that prohibiting consideration of prevalent workplace accommodations and technology would be antithetical to this flexible approach and to the commission's exercise of discretion within its field of expertise. Thus, the court in *Kidd II* concluded that the worker's capacities to sit, stand, and walk may be combined, rendering the worker capable of sedentary work in some environments, and Dr. Shah's report constituted some evidence. In addition, despite the need for frequent yet brief rest periods, prevalent workplace accommodations and telework options supported the commission's determination that the worker was capable of engaging in sustained remunerative employment. *See id.* at ¶ 24-31.

{¶ 85} *Kidd II* is instructive and provides guidance in the present case. Here, Dr. Popovich's report provided evidence that claimant can perform sedentary work, and the report was not contradictory. Dr. Popovich acknowledged that claimant has functional deficits in the areas of lifting, ambulating, pushing, pulling, carrying, kneeling, and climbing; sitting and standing for prolonged periods is limited; claimant needs the ability to change positions between siting and standing on an as-necessary basis; and claimant reported he could sit for one-half hour at a time, stand for five minutes at a time, and walk for half of one block. However, these restrictions do not necessarily preclude sedentary employment, and Dr. Popovich found they did not. Although claimant claims that he would need 15 "breaks" every 8-hour shift, it should be noted that those "breaks" are not necessarily breaks from completing any work-related tasks. The "breaks" are only temporary relief from sitting. Dr. Popovich's actual restriction states that claimant only

requires the ability to change positions between siting and standing on an as-necessary basis. Dr. Popovich does not indicate that claimant must stop working during these temporary position changes. Importantly, these temporary changes from a seated position to a standing position in no way equate to a definitive inability to sit "most of the time." Furthermore, standing for five minutes and walking one-half of one block also fit within the "sedentary work" language used in Ohio Adm.Code 4121-3-34(B)(2)(a), i.e., "brief periods of time." Dr. Popovich opined that claimant's changing of positions on an as-needed basis did not disqualify him from sedentary employment, and the magistrate finds no inconsistency in this opinion.

{¶ 86} The findings in *Kidd II* support the conclusion that the commission did not abuse its discretion when it relied upon Dr. Popovich's report. Even if the "breaks" cited by claimant were "rest periods" away from work-related activity, the court in *Kidd II* found that the allowance of rest periods every 15 to 20 minutes for 1 to 2 minutes as needed during standing, sitting, or walking were consistent with the Ohio Administrative Code's definition of "sedentary work." Also notable, even though not cited by the commission here, the Supreme Court in *Kidd II* acknowledged that modern innovations in office equipment, such as sit/stand desks and wireless telephone technology, as well as work-from-home options, offered workers the ability to change positions at their convenience. Thus, despite claimant's need to change from the seated position to a standing or walking position every 30 minutes, or even take a brief rest period from any job tasks, prevalent workplace accommodations and telework options may support the commission's determination that the worker was capable of engaging in sustained remunerative employment. Applying *Kidd II* to the present case, Dr. Popovich's report could be relied upon as "some evidence" in light of the fact that claimant's capacities to sit, stand, and walk may be combined, rendering him capable of sedentary work in some environments.

{¶ 87} Claimant also argues that the commission abused its discretion when it denied PTD compensation because it failed to perform any analysis as to whether the combination of the allowed psychological conditions/restrictions found by Dr. Babula and the allowed physical conditions prevented claimant from performing sustained remunerative employment and referenced only claimant's physical capacity to work. Furthermore, claimant contends, in briefly referencing Dr. Babula's psychological report, the SHO only mentioned Dr. Babula's findings that claimant would need breaks from

coworkers and to avoid feeling overwhelmed, but Dr. Babula's report contained a lot more restrictions that the SHO failed to acknowledge. Claimant asserts that Dr. Babula's restrictions of low stress; the ability to take breaks from coworkers, customers, or tasks when feeling overwhelmed; and an environment to which claimant could escape to take a break for 30 minutes, or switch to a task in another area that removes him from the source of the stress, requires explanation as to how the combination of these restrictions resulted in the ability to perform sustained remunerative employment on a sedentary basis. Claimant points to Ms. Veh's vocational assessment, in which she found that requiring the need to take breaks of up to 30 minutes from coworkers or other staff when feeling overwhelmed is not an accommodation that would generate any productive pace, and an employer is unlikely to allow an employee to stand up and take a break every 30 minutes, as it would not produce completion of job tasks in a timely or productive manner.

{¶ 88}   The magistrate finds the commission did not abuse its discretion. The SHO cited and relied upon Dr. Babula's psychological report. Dr. Babula found claimant's concentration remains intact, his psychological impairments do not prohibit him from completing many basic tasks, and his thinking tends to be concrete. Although Dr. Babula also found that claimant experiences irritation, which can impair social aspects of job positions, and he can grow overwhelmed, requiring breaks or avoidance of others, these limitations do not render claimant incapable of sedentary work or sustained remunerative employment. Although claimant criticizes the SHO for only mentioning Dr. Babula's finding that claimant would need breaks from coworkers and to avoid feeling overwhelmed, and urges that Dr. Babula's report contains a lot more restrictions than the SHO acknowledged, these two restrictions were the crux of Dr. Babula's findings. Dr. Babula's restriction to jobs with low stress in his report is implicit in the SHO's finding that claimant needs to avoid feelings of being overwhelmed, and, similarly, the SHO's statement that claimant would need breaks from coworkers generally summarizes Dr. Babula's restriction that claimant would require the ability to escape to take a break for 30 minutes. Importantly, Dr. Babula found that claimant would require the ability to take a break for 30 minutes "or" switch to a task in another area that removes him from the source of stress; thus, claimant would not necessarily need a break from work-related activities if the employer permitted him to work on another task away from the stressor. Furthermore, there is no indication of the frequency of the need for such breaks; thus, for claimant to

argue that any such breaks would be inconsistent with sustained remunerative employment is without basis. Some low-stress, sedentary jobs might necessitate no need for breaks or the changing to another task away from the stressor.  Also, Ms. Veh's conclusion that an employer's accommodation for Dr. Babula's restrictions would not generate any productive pace is without basis, given the employer may be able to assign him a new job task away from the stressor with no loss of productivity. Therefore, the commission did not abuse its discretion when it relied upon Dr. Babula's report, and when combined with the physical findings from Dr. Popovich's report, as discussed above, the magistrate finds there was some evidence to support the denial of PTD.

{¶ 89} Accordingly, it is the magistrate's recommendation that this court should deny claimant's petition for writ of mandamus.


/S/ MAGISTRATE                                
THOMAS W. SCHOLL III


**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.