**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Urban v. Wano Expiditing, Inc.*, Slip Opinion No. 2025-Ohio-3009.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-3009

THE STATE EX REL. URBAN, APPELLEE, *v.* WANO EXPIDITING, INC., ET AL.; INDUSTRIAL COMMISSION OF OHIO, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Urban v. Wano Expiditing, Inc.*, Slip Opinion No. 2025-Ohio-3009.]**

*Workers' compensation—Permanent-total-disability ("PTD") compensation—Adm.Code 4121-3-34(D)(3)(i)—Industrial Commission complied with Adm.Code 4121-3-34(D)(3)(i) by considering claimant's psychological as well as physical conditions before concluding that he could engage in sustained remunerative employment and therefore denying his application for PTD compensation—Adm.Code 4121-3-34(D)(3)(i) does not require a hearing officer to identify every recommended restriction in a medical report that the hearing officer relies on—Court of appeals' judgment issuing writ of mandamus directing commission to vacate its order reversed.*

(No. 2024-1155—Submitted May 13, 2025—Decided August 26, 2025.)

APPEAL from the Court of Appeals for Franklin County,
No. 22AP164, 2024-Ohio-2461.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ.

**Per Curiam.**

{¶ 1} Appellant, the Industrial Commission of Ohio, denied appellee Randall Urban's application for permanent-total-disability ("PTD") compensation, finding that he retains the ability to perform sustained remunerative employment with limitations at a sedentary level. Urban filed a complaint in the Tenth District Court of Appeals, seeking a writ of mandamus directing the commission to vacate its order and enter a new one. The Tenth District granted the writ, concluding that the commission had failed to comply with Adm.Code 4121-3-34(D)(3)(i), an administrative rule under which it was required to consider Urban's allowed psychological conditions in combination with his allowed physical conditions. The commission appealed.

{¶ 2} Because Urban has not established that the commission failed to comply with the administrative rule, we reverse the Tenth District's judgment and deny the writ.

## I. BACKGROUND

### A. Urban's Injury and PTD-Compensation Application

{¶ 3} In February 2006, Urban sustained a work-related injury while unloading packages as a delivery driver for Wano Expiditing, Inc. His workers' compensation claim was allowed for both physical and psychological conditions— namely: "herniated disc L3-L4 L4-L5; depressive disorder; anxiety disorder; lumbar disc displacement L5-S1; lumbar radiculopathy; left foot drop; and facet joint disease L3-L4; facet joint disease L4-L5; [and] facet joint disease L5-S1."

2

Over the ensuing years, Urban underwent four back surgeries but continued to experience back and leg pain. He has not worked outside the home since his injury.

{¶ 4} In April 2021, Urban applied for PTD compensation. To support the application, Urban submitted two medical reports—one that a physician completed after conducting a physical evaluation of Urban and another that his treating psychiatrist completed after evaluating him based on his allowed psychological conditions. Both doctors concluded that Urban was unable to engage in sustained remunerative employment.

{¶ 5} At the request of the commission, Harvey A. Popovich, M.D., conducted a physical examination of Urban. Dr. Popovich found that Urban was limited in his abilities to lift, ambulate, push, pull, carry, kneel, climb, and sit and stand for prolonged periods of time but that he could capably use his arms and hands, communicate, drive, and provide basic self-care. Dr. Popovich concluded that Urban was capable of sedentary work, but he clarified in his report that "on an as necessary basis," Urban would "need the ability to change positions between sitting and standing."

{¶ 6} Mark A. Babula, Psy.D., conducted a mental and behavioral examination of Urban at the commission's request. Dr. Babula found that Urban's concentration remained intact, that his psychological conditions did not prohibit him from completing many basic tasks, and that his thinking tended to be concrete. Dr. Babula concluded that Urban was capable of work with the following limitations:

> He would need a position with low stress, to prevent him from getting overwhelmed. He would need the ability to take breaks from coworkers, customers, or tasks when feeling overwhelmed, requiring an environment to which he could escape and take a break,

such as 30 minutes, or switch to a task in another area that removes him from the source of stress.

{¶ 7} Thereafter, Urban requested an evaluation from a vocational consultant, who submitted a report expressing disagreement with the conclusions of Drs. Popovich and Babula. The vocational consultant concluded that an employer was unlikely to accommodate the restrictions in Dr. Babula's report and that due to Urban's physical conditions and depressive disorder, he had not retained the capacity to engage in any sustained remunerative employment and was "100% totally unemployable."

{¶ 8} In November 2021, a staff hearing officer ("SHO") for the commission denied Urban's application for PTD compensation. The SHO relied on the reports of Drs. Popovich and Babula and found that Urban retained capacity to engage in sustained remunerative employment at a sedentary level with the limitations contained in those reports. Regarding nonmedical factors, the SHO concluded that Urban's age (46 years old at the time) and his work record were positive vocational factors while his education (a high-school degree) was a neutral factor.[1] The SHO further noted that Urban would benefit from retraining in order to find a job within his restrictions and that he had maintained a driver's license and was able to drive limited distances. The SHO concluded that because Urban retained physical capacity to work at a sedentary level and the nonmedical factors did not preclude his return to sustained remunerative employment, he was not permanently and totally disabled.

---

1. If a hearing officer determines that a claimant is unable to return to the claimant's former position but may be able to perform other work, the hearing officer must also consider "non-medical factors," including the injured worker's age, his education, his work record, and all other factors contained in the record that might be important in determining whether the injured worker may be able to return to the job market by using past employment skills or those skills that may be reasonably developed. Adm.Code 4121-3-34(D)(2)(b).

### B. The Tenth District Issues a Writ of Mandamus

{¶ 9} Urban filed a complaint for a writ of mandamus in the Tenth District, alleging, among other things, that the SHO had abused her discretion by failing to consider all of Urban's allowed conditions. He cited Adm.Code 4121-3-34(D)(3)(i), which applies to injured workers with claims allowed for psychiatric conditions who retain the physical ability to perform some work. The administrative rule requires the hearing officer to consider "whether the allowed psychiatric condition(s) in combination with the allowed physical condition(s) prevents the injured worker from engaging in sustained remunerative employment."

{¶ 10} A magistrate concluded that the SHO had not abused her discretion and recommended that the Tenth District deny Urban's request for a writ. 2024-Ohio-2461, ¶ 78, 88-89 (10th Dist.). Urban objected, arguing again that the SHO had failed to comply with Adm.Code 4121-3-34(D)(3)(i).

{¶ 11} In a split decision, a panel of the Tenth District sustained Urban's objection to the magistrate's decision. The majority concluded that because the SHO had failed to acknowledge in her order the full extent of Urban's psychological limitations, the SHO did not properly consider Urban's psychological conditions in combination with his physical conditions, as required by Adm.Code 4121-3-34(D)(3)(i). 2024-Ohio-2461 at ¶ 33, 38, 47-49, 56. Specifically, the majority focused on Dr. Babula's finding—explained in his report—that Urban would need "'the ability to take breaks from coworkers, customers, *or tasks* when feeling overwhelmed.'" (Emphasis added by the Tenth District.) *Id.* at ¶ 44-46. The majority found significant that in summarizing the restrictions noted in Dr. Babula's report, the SHO's order does not mention the limitation that Urban potentially would need 30-minute breaks from "tasks" and instead states only that Dr. Babula had opined that Urban would need breaks "'from co-workers and to avoid feeling overwhelmed.'" *Id.* at ¶ 44.

{¶ 12} Because the SHO did not acknowledge in her order Dr. Babula's task-related psychological limitation, the Tenth District majority said, it could not infer that the SHO had appreciated the full scope of the psychological restrictions noted in Dr. Babula's report. *Id.* at ¶ 47-49. The majority explained, "By summarizing some—but not all—of the psychological limitations contained in the report on which the SHO's order relied, we are not convinced the SHO fully analyzed whether the entirety of Dr. Babula's restrictions in combination with the physical restrictions opined by Dr. Popovich rendered Mr. Urban eligible for permanent total disability compensation." *Id.* at ¶ 52.

{¶ 13} The Tenth District majority further stated that its conclusion was reinforced by the SHO's failure to cite Adm.Code 4121-3-34(D)(3)(i) or mention the vocational consultant's report, which the majority characterized as "the only piece of evidence containing opinions relevant to the analysis required by [the rule]." *Id.*, 2024-Ohio-2461, at ¶ 53 (10th Dist.). The majority also noted that the SHO's relevant findings focused almost exclusively on Urban's *physical* capacity to work. *Id.* at ¶ 13.

{¶ 14} The Tenth District ultimately ordered the commission to vacate its order denying Urban's application for PTD compensation and enter a new order adjudicating the application in a manner consistent with the majority's opinion. *Id.* at ¶ 57. The dissenting judge believed that the SHO had complied with Adm.Code 4121-3-34(D)(3)(i); therefore, the judge would have adopted the magistrate's decision and denied the writ. *Id.* at ¶ 63-69 (Dorrian, J., dissenting). The commission has filed this direct appeal.

## II. LEGAL STANDARDS

### A. Mandamus Standard

{¶ 15} To be entitled to a writ of mandamus, a relator must show by clear and convincing evidence that he or she has a clear legal right to the requested relief, that the commission has a clear legal duty to provide that relief, and that the relator

has no adequate remedy in the ordinary course of the law. *State ex rel. Zarbana Industries, Inc. v. Indus. Comm.*, 2021-Ohio-3669, ¶ 10. In a direct appeal of the judgment in a mandamus action that originated in the court of appeals, we review the judgment as if the action had been originally filed here. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141, 164 (1967).

{¶ 16} A writ of mandamus may lie when there is a legal basis to compel the commission to perform its duties under the law or when the commission has abused its discretion in carrying out its duties. *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 2008-Ohio-1593, ¶ 9. "Where a commission order is adequately explained and based on some evidence, even evidence that may be persuasively contradicted by other evidence of record, the order will not be disturbed as manifesting an abuse of discretion." *State ex rel. Mobley v. Indus. Comm.*, 1997-Ohio-181, ¶ 16. Because an order that grants or denies PTD compensation concerns the extent of a claimant's disability, it is not subject to appeal and may be challenged by a writ of mandamus. *See* R.C. 4123.512(A); *State ex rel. Kidd v. Indus. Comm.*, 2023-Ohio-2975, ¶ 16.

### B. PTD Compensation

{¶ 17} Permanent total disability must be compensated when "[t]he impairment resulting from the employee's injury . . . prevents the employee from engaging in sustained remunerative employment utilizing the employment skills that the employee has or may reasonably be expected to develop." R.C. 4123.58(C)(2). The purpose of PTD compensation is to compensate injured workers for impairment of their earning capacity. *State ex rel. Gen. Motors v. Indus. Comm.*, 42 Ohio St.2d 278, 282 (1975). "A worker who is permanently and totally disabled has no earning capacity and is entitled to 'receive an award to continue until [the worker's] death.'" *State ex rel. Baker Material Handling Corp. v. Indus. Comm.*, 1994-Ohio-437, ¶ 33, quoting R.C. 4123.58(A).

{¶ 18} Section 4121-3-34 of the Administrative Code sets forth definitions, procedures, and guidelines to ensure that the commission adjudicates and processes applications for PTD compensation in a fair and timely manner. Adm.Code 4121-3-34(A). Adm.Code 4121-3-34(D)(3) enumerates nine general factors that must be considered in all PTD applications. For example, subsection (D)(3)(a) places the burden on the injured worker to prove that he or she is entitled to PTD compensation; subsection (D)(3)(g) requires the hearing officer to review all relevant factors in the record that may affect the injured worker's ability to work; and subsection (D)(3)(h) requires the order to specifically state what evidence the hearing officer relied on in reaching the conclusion, explain the basis for the decision, and, when applicable, state how the nonmedical factors interact with the worker's medical impairments.

{¶ 19} In this case, the Tenth District concluded that the commission had failed to comply with the final factor, Adm.Code 4121-3-34(D)(3)(i), which states:

> In claims in which a psychiatric condition(s) has been allowed and the injured worker retains the physical ability to engage in some sustained remunerative employment, the adjudicator shall consider whether the allowed psychiatric condition(s) in combination with the allowed physical condition(s) prevents the injured worker from engaging in sustained remunerative employment.

### C. "Psychiatric Conditions" or "Psychological Conditions"

{¶ 20} Adm.Code 4121-3-34(D)(3)(i) refers only to "psychiatric condition(s)." However, the parties, the SHO, Urban's treating psychiatrist, and Dr. Babula have all described Urban's mental disorders as "psychological conditions." Consequently, the Tenth District decided that for purposes of this case,

8

"psychiatric conditions" and "psychological conditions" have the same meaning. 2024-Ohio-2461 at ¶ 27, fn. 1 (10th Dist.).

{¶ 21} Neither "psychiatric condition" nor "psychological condition" is defined in Chapter 4121-3 of the Administrative Code. *See* Adm.Code 4121-3-34(B). In some portions of Chapter 4121-3, the terms are used together. *See, e.g.*, Adm.Code 4121-3-09(A)(4)(a) (requiring the injured worker to provide a list of medical providers treating "psychological and/or psychiatric conditions"); Adm.Code 4121-3-34(C)(1) (requiring that an application for PTD compensation be accompanied by medical evidence for allowed "psychiatric or psychological condition(s)").

{¶ 22} For purposes of this case, the distinction, if any, is not relevant. "When a term is not defined in the Administrative Code or the Revised Code, it must be read in its context and in accordance with grammar rules and common usage." *State ex rel. Cassens Corp. v. Indus. Comm.*, 2024-Ohio-526, ¶ 13. In determining the plain and ordinary meaning of a word, we often look to dictionary definitions. *See, e.g.*, *id.* at ¶ 14-15. "Psychiatric" is defined as "engaged in the practice of psychiatry: dealing with cases of mental disorder." *Webster's Third New International Dictionary* (2002). Under any ordinary meaning, Urban's mental disorders—depressive disorder and anxiety disorder—are psychiatric conditions. *See, e.g.*, *State ex rel. Pate v. Indus. Comm.*, 2002-Ohio-5444, ¶ 1-2 (describing an injured worker's allowed claim for depression and anxiety as a "psychiatric condition"). Indeed, a psychiatrist has been treating Urban.

{¶ 23} Because Adm.Code 4121-3-34(D)(3)(i) plainly applies to Urban's mental disorders—and because no party has questioned the applicability of the administrative rule to Urban's application—we follow the lead of the parties and the Tenth District by referring to Urban's mental disorders as "psychological conditions." We need not decide in this case whether there is any substantive

difference between "psychiatric conditions" and "psychological conditions" for purposes of Adm.Code 4121-3-34.

## III. ANALYSIS

### A. Summary of the Parties' Arguments

{¶ 24} On appeal, the commission asserts that the SHO complied with Adm.Code 4121-3-34(D)(3)(i) by first summarizing in her order the findings of Drs. Popovich and Babula and then concluding that Urban retained capacity to perform sustained remunerative employment "with limitations contained in the doctors' reports." The commission argues that the SHO was not required to do anything more than state the evidence she relied on and briefly explain the reasoning for her decision and that the Tenth District improperly reweighed the evidence by concluding that the SHO did not fully appreciate the scope of Dr. Babula's report.

{¶ 25} Urban argues that because his claim allowed psychological conditions and the SHO found him physically able to work, Adm.Code 4121-3-34(D)(3)(i) required the SHO to separately consider Urban's ability to work based on the combination of limitations relating to his physical *and* psychological conditions. Merely concluding that Urban could return to work with "limitations contained in the doctors' reports," Urban asserts, was insufficient—especially because the SHO failed to fully identify the extent of the psychological limitations listed in Dr. Babula's report. Therefore, Urban contends, the Tenth District correctly found that the commission must enter a new order explaining how his physical restrictions combined with the entirety of his psychological restrictions results in his ability or inability to work.

### B. The SHO Complied with the Administrative Rule

{¶ 26} Although the SHO did not cite Adm.Code 4121-3-34(D)(3)(i) or quote the operative language from that administrative rule, we find that the content of the SHO's order sufficiently establishes that she considered Urban's

psychological conditions in combination with his physical conditions before concluding that he could engage in sustained remunerative employment.

{¶ 27} The SHO's order first identified Urban's various allowed physical and psychological conditions and noted that he was found to be at maximum medical improvement for the psychological conditions in June 2019 and for the physical conditions in August 2020.[2] The SHO then summarized the reports of Drs. Popovich and Babula. Immediately after summarizing Dr. Babula's report, the SHO concluded: "The Hearing Officer finds based on the above analysis [Urban] retains a functional capacity to perform sustained remunerative employment with limitations contained in the doctors' reports. The Hearing Officer finds [Urban] is able to perform at least a [sic] sedentary work."

{¶ 28} The SHO's finding was "based on the above analysis," which addressed both Urban's physical and psychological conditions, and the SHO recognized that Urban could return to employment with the "limitations contained in the doctors' reports." The only reports identified were those of Drs. Popovich and Babula, who had evaluated Urban based on his physical and psychological conditions, respectively. The SHO's reliance on those two reports necessarily shows—at the very least, implicitly—that she considered Urban's physical *and* psychological conditions.

{¶ 29} We reached a similar conclusion in *State ex rel. Zollner v. Indus. Comm.*, 1993-Ohio-49, although that case did not involve Adm.Code 4121-3-34(D)(3)(i). After the commission denied a claim for PTD compensation based on an injured worker's allowed physical and psychiatric conditions, he filed a mandamus action arguing that because the commission failed to identify his

_____

2. "Maximum medical improvement" is defined as "a treatment plateau (static or well-stabilized) at which no fundamental functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative procedures." Adm.Code 4121-3-34(B)(5).

psychiatric condition in the PTD order, the commission had not properly considered it. We rejected that argument because in denying the PTD-compensation application, the commission had relied on two medical reports completed by doctors who had evaluated the worker's physical and psychiatric conditions, respectively. By relying on those two reports, the commission "clearly took [the worker]'s psychiatric condition into account in denying [PTD compensation]." *Id.* at ¶ 10; *see also State ex rel. Jackson v. Indus. Comm.*, 1997-Ohio-152, ¶ 7, fn. 1 (even though the commission's order identified only one allowed condition, the commission's reliance on medical reports taking into account the injured worker's two allowed conditions "tend[ed] to confirm the commission's appreciation of both claims").

{¶ 30} Here, the SHO expressly identified Urban's two psychological conditions and relied on reports from Dr. Popovich, who opined on Urban's physical restrictions, and Dr. Babula, who opined on his psychological restrictions. These facts provide sufficient assurance that the SHO considered Urban's psychological conditions in combination with his physical conditions in reaching her ultimate decision.

## C. The Tenth District's Reasoning Does Not Support Vacating the SHO's Order

{¶ 31} None of the reasons cited by the court of appeals require vacating the SHO's order and issuing a new one.

{¶ 32} The Tenth District majority primarily found that because the SHO's summary of Dr. Babula's report included some—but not all—of the work restrictions identified in that report, the SHO did not "appreciate," "analyze," or "consider" the full scope of Dr. Babula's recommended restrictions. 2024-Ohio-2461 at ¶ 42-53 (10th Dist.). But standing alone, the fact that the SHO did not repeat when summarizing Dr. Babula's report all the restrictions that he had identified does not mean that the SHO failed to consider or appreciate those

restrictions. The SHO ultimately decided that Urban retained capacity to work with the "limitations contained in the doctors' reports"; therefore, the SHO expressly incorporated the restrictions into her order.

{¶ 33} Moreover, Adm.Code 4121-3-34(D)(3)(i) requires the hearing officer to "consider" whether "the allowed psychiatric *condition(s)* in combination with the allowed physical *condition(s)*" prevent the injured worker from engaging in sustained remunerative employment. (Emphasis added.) The administrative rule does not require a hearing officer to *identify* every recommended *restriction* in a medical report that the hearing officer relied on. Neither Urban nor the Tenth District majority has cited any legal authority requiring a hearing officer to recite every restriction or limitation when merely summarizing a medical report.[3]

{¶ 34} To the contrary, it is long established that in an order granting or denying benefits, the commission is required only to specify the evidence it relied on and to briefly explain the reasoning for its decision. *See State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991), syllabus. "Although the commission is required to consider all evidence properly before it, it is not required to list each piece of evidence that it considered in its order." *State ex rel. Buttolph v. Gen. Motors. Corp., Terex Div.*, 1997-Ohio-34, ¶ 19. Further, we apply a presumption of regularity that attaches to all commission proceedings as well as a presumption that the commission considered all the evidence. *See State ex rel. Lovell v. Indus. Comm.*, 1996-Ohio-321, ¶ 14.

{¶ 35} Here, the SHO's order states that "[a]ll of the evidence was reviewed and considered in rendering th[e] decision." Given our presumptions of regularity and of consideration of all the evidence, we accept the SHO's statement and will not speculate as to why she did not recite each restriction identified in Dr. Babula's

---

3. By comparison, Adm.Code 4121-3-34(D)(3)(h) requires a hearing officer to specifically list the nonmedical disability factors "within the order and state how such factors interact with the medical impairment resulting from the allowed condition(s) in the claim(s) in reaching the decision."

report. Without more, we presume that the SHO reviewed and understood the entirety of that report.

**{¶ 36}** In support of its judgment ordering the commission to vacate the SHO's order, the Tenth District majority also noted that the SHO had failed to mention the vocational consultant's report. 2024-Ohio-2461 at ¶ 53 (10th Dist.). But as noted above, the commission is not required to list in its order each piece of evidence that it considered. *Buttolph* at ¶ 19. Therefore, the fact that the SHO's order does not mention the vocational consultant's report does not suggest that the SHO failed to consider Urban's psychological conditions in combination with his physical conditions. *See, e.g.*, *State ex rel. Rothkegel v. Westlake*, 2000-Ohio-364, ¶ 5-10 (when the commission's order listed only the evidence relied on, rather than the evidence considered, omission of a vocational report from the order did not raise a presumption that the report was overlooked).

**{¶ 37}** Lastly, the Tenth District majority noted that aside from one paragraph briefly summarizing Dr. Babula's opinion, the SHO's relevant findings on Urban's eligibility for PTD compensation focused almost exclusively on his physical capacity to return to work. 2024-Ohio-2461 at ¶ 13, 32, 47. It is true that after summarizing Dr. Babula's opinion, the SHO did not further mention Urban's psychological conditions and that in the closing paragraphs of her order, the SHO referred only to Urban's "physical capacity" to return to work. But as explained above, earlier in her order, the SHO clearly found, based in part on the reports of Dr. Popovich *and* Dr. Babula, that Urban retained capacity to perform sustained remunerative employment.

## IV. CONCLUSION

**{¶ 38}** For the reasons explained above, we reverse the Tenth District's judgment sustaining Urban's objection to the magistrate's decision and we deny the writ.

Judgment reversed

and writ denied.

_____

Schaffer and Associates, L.P.A., and Thomas J. Schaffer, for appellee.

Dave Yost, Attorney General, and David M. Canale, Assistant Attorney General, for appellant.

Jon Goodman Law, L.L.C., and Jon H. Goodman, urging affirmance for amicus curiae Ohio Association for Justice.

_____